IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-CA-00354-SCT

*MARTHA A. TURNER*

*v.*

*HUDSON SALVAGE, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/96 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RANDALL SCOTT WELLS |
| ATTORNEY FOR APPELLEE: | RODNEY D. ROBINSON |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | REVERSED AND REMANDED - 3/12/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/13/98 |

**BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This appeal challenges the granting of a summary judgment for the appellee store whose employee stopped and detained the appellant customer *after* another employee had previously questioned the appellant about a shoplifting accusation and found it to be false. We conclude that the *second* stop and detention by the appellee's employee was not immune from liability under Miss. Code Ann. § 97-23-95 (1994). Thus, we reverse and remand this cause of action.

**I.**

¶2. On August 04, 1994, the appellant Martha Turner (Turner) entered the appellee store Hudson Salvage, Inc. (Hudson Salvage) to look at various items for possible purchase, particularly shoes previously advertised on sale. Turner chose approximately seven or eight pairs of shoes and placed them in her shopping cart. She then spent about two hours browsing other areas of the store. Subsequently, she returned to the shoe department and decided to purchase five pairs of the previously selected shoes.

¶3. As she tried on various shoes, a customer informed Rodney Freightman (the security guard) that she saw Turner swap her old, worn shoes for a pair of Hudson Salvage's shoes and that Turner

placed her old shoes on the shelf. Now suspicious of Turner, the security guard watched her, noting that she was trying on several pairs of shoes. The security guard testified at his deposition that he also believed he saw Turner swap shoes.

¶4. The security guard followed Turner to the checkout stand and bagged her purchases for her. As she walked out of the store, the security guard followed Turner to the parking lot, where he stopped her and asked if he could inspect the shoes she was wearing. In response to Turner's disbelief, the security guard explained that someone had accused Turner of swapping shoes. Turner acquiesced by taking off her shoes. Upon inspecting the shoes, the guard realized that the shoes were well-worn, with a wad of gum stuck on the left side of one of the shoes. Satisfied that the shoes did not belong to Hudson Salvage, the security guard apologized to Turner for the mistaken accusation and allowed her to leave.

¶5. As Turner walked toward her car, she heard a male voice yelling, "Ma'am, you need to come back into the store; you need to see the store manager." The voice belonged to an auditor for Hudson Salvage, Bobby Robertson (Robertson), who was in the office when he overheard the store manager and security guard discuss a possible shoplifting. Another Hudson Salvage employee who was in the office also, Wanda Murrell, pointed out Turner to Robertson as the customer who had shoplifted.

¶6. After overhearing the shoplifting allegation, Robertson remained in the office and continued to work. He did not personally observe Turner as she shopped, nor did he talk with the manager, security guard, or any other employee about the accusation. Robertson did, however, observe the security guard and Turner talking in the parking lot. He further observed that the security guard and Turner walked away from each other in a "normal" fashion after the conversation ended. Nevertheless, Robertson rushed out of the store, passing right by the security guard who had just questioned Turner, and "took it upon [him]self" to demand that Turner return to the manager's office for questioning. Despite Turner informing Robertson that the security guard had already checked her shoes and determined that they were not stolen, Robertson still insisted that she return to talk with the manager.

¶7. Understandably frustrated, Turner returned to the store, escorted by Robertson and several security guards, including the security guard who initially checked her shoes. Once in the manager's office, Robertson looked at Turner's shoes and noted that they had "a piece of tape or something" on them and that they "looked wore" and "were not new." After making this observation, Robertson "walked right on back to the back and got a Coke." After a short delay, the store manager came into the office and apologized after Turner took off her shoes and showed him that they did not belong to Hudson Salvage.

¶8. Turner filed a suit against Hudson Salvage on grounds of unlawful detention and slander. Hudson Salvage filed a motion for summary judgment, arguing that it was immune from liability under Miss. Code Ann. § 97-23-95 because the security guard (its employee) and a disinterested customer "witnessed" Turner swap shoes and leave with what appeared to be unpaid-for merchandise. Turner opposed the motion, arguing that while the detention and questioning by the security guard was done in good faith and based upon probable cause, the second stop and detention by Robertson was not and thus was not protected under § 97-23-95.

¶9. The trial court granted the motion, finding the evidence undisputed that the security guard and

customer saw Turner swap shoes, that the stop and questioning was reasonable, and that Hudson Salvage was therefore immune from liability. In response to Turner's specific argument that the second stop was not shielded from liability, the court held that if one of the store's employees acted in good faith and upon probable cause, then another employee similarly had probable cause and a good faith basis for detaining Turner.

¶10. Aggrieved by the summary judgment, Turner appeals to this Court.

## II.

¶11. Turner argues the trial court erred in finding that the second stop by Robertson was protected from liability under § 97-23-95. Hudson Salvage counters that since the security guard's actions were privileged, Robertson's actions were likewise privileged. Hudson Salvage also emphasizes that Turner was detained and questioned in a reasonable manner, and as such, Hudson Salvage is not liable for anything.

## III.

¶12. Summary judgment is only proper where it is shown, beyond a reasonable doubt, that the non-movant would be unable to prove facts to support the claims that are alleged. *Downs v. Choo*, 656 So. 2d 84, 85-86 (Miss. 1995). In determining whether a summary judgment should have been granted, this Court reviews the record evidence *de novo. Id.* at 85; *Mantachie Natural Gas District v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992). We review all the evidence in the light most favorable to the non-movant including "admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." We also presume all evidence in the non-movant's favor to be true. *Downs v. Choo*, 656 So. 2d at 85; *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993). If there is a doubt whether a genuine issue of material fact exists, the non-movant receives the benefit of that doubt. *Downs v. Choo*, 656 So. 2d at 85; *Mantachie Natural Gas District v. Miss. Valley Gas Co.*, 594 So. 2d at 1173.

¶13. Section 97-23-95 provides in pertinent part:

> If any person shall commit or attempt to commit the offense of shoplifting, or if any person shall wilfully conceal upon his person or otherwise any unpurchased goods, wares or merchandise . . . the merchant or any employee thereof or any peace or police officer, *acting in good faith and upon probable cause based upon reasonable grounds therefor*, may question such person *in a reasonable manner* for the purpose of ascertaining whether or not such person is guilty of shoplifting . . .

Miss. Code Ann. § 97-23-95 (1994) (emphasis added).

¶14. Two elements must be shown in order for a store owner to claim the qualified immunity afforded under § 97-23-95. First, there must be proof of a good faith basis and probable cause based upon reasonable grounds to detain and question the customer. Second, there must be proof that the detention and questioning of the customer was done in a reasonable manner. To claim the privilege, both elements must be present.

¶15. The burden of proof rests upon the party asserting the privilege to show that probable cause

existed to detain and question the suspected shoplifter. ***J.C.Penney Co., Inc. v. Cox***, 246 Miss. 1, 12, 148 So. 2d 679, 684 (1963). Mere suspicion or conjecture does not meet the probable cause requirement. Moreover, the qualified privilege does not give a store owner or its employees the right to embarrass or harass a suspect in public view of others in a rude manner. ***Id.*** at 13; 148 So. 2d at 685.

¶16. In finding that Robertson's actions were privileged because another store employee (the security guard) acted in good faith and upon probable cause, the trial court relied upon ***Thompson v. LeBlanc***, 336 So. 2d 344 (La. Ct. App. 1976). However, ***Thompson v. LeBlanc*** is distinguishable from these facts and does not support the trial court's ruling.

¶17. There, a family of four went into a women's apparel shop in a mall. Two store employees, including the owner's wife, were in the shop's office eating lunch. The workers suspected the mother of placing a bathing suit in her large purse. ***Id.*** at 346. Pursuant to the shop's policy, the wife called her husband, the owner (LeBlanc), and informed him of the suspected shoplifting. ***Id.*** LeBlanc was nearby in another store he owned. He came over and called the police. The family left the store and visited a nearby card shop. The family then passed by LeBlanc's shop on their way out of the mall. LeBlanc feared that they were going to get away before the police arrived. Thus, he followed them outside and asked them to return to the shop because the employees had accused the mother of shoplifting. ***Id.*** at 347. In the shop, the mother voluntarily emptied her purse on the counter and allowed the women to search the contents. She had not stolen anything.

¶18. The lower court held that the store owner was immune from liability under a similar Louisiana statute. ***Id.*** On appeal, the customer argued that, because LeBlanc did not have personal knowledge of the events upon which the detention was based, the requisite probable cause was not present. ***Id.*** The reviewing court disagreed, holding that one employee (or owner) acts in good faith and with probable cause even when the questioning of a suspected shoplifter is based upon the report or complaint of a fellow employee and is not based upon the personal knowledge of the person doing the questioning. ***Id.*** at 348.

¶19. It is this reasoning upon which the trial court in the instant case relied. Since the security guard had probable cause and a good faith basis to detain Turner, Robertson likewise had probable cause and a good faith basis. We cannot agree with the lower court's rationale in light of the facts of this case.

¶20. Here, Turner concedes that the initial detention and questioning by the security guard clearly fell within § 97-23-95. Once the security guard questioned Turner and was satisfied that she had not shoplifted, Hudson Salvage's employees no longer had a privilege to detain and question Turner. Thus, when Robertson detained Turner a second time, his actions exceeded the protections afforded under the statute, especially since he (1) watched the security guard question Turner previously, (2) had an opportunity to inquire about the security guard's findings before detaining Turner a second time, and (3) did not even attempt to find out what the security guard discovered before he detained her.

¶21. Robertson participated in the very conduct that § 97-23-95 cautions against, i.e., "embarrass[ing] or harass[ing] individuals suspected" based upon mere suspicion or conjecture. ***J.C. Penney Co., Inc. v. Cox***, 246 Miss. at 13, 148 So. 2d at 685; *see also* ***Southwest Drug Stores of***

*MS, Inc. v. Garner*, 195 So. 2d 837 (Miss. 1967) (holding manager negligent and careless in accusing a customer of stealing soap when manager could have easily ascertained whether the customer paid for the soap by asking the cashier).

## IV.

¶22. Hudson Salvage also argues that since Turner concedes she was questioned reasonably, there should be no damages or liability. The problem with this contention is that store owners and their employees would be shielded from liability every time they accused a customer of shoplifting without any basis or probable cause whatsoever, so long as the questioning is done in a reasonable manner. Again, § 97-23-95 contains two elements that must be present before the privilege can be claimed. Not only must the questioning be reasonable, but the detention must first be based upon probable cause and a good faith belief in the accused's guilt.

## V.

¶23. Hudson Salvage lastly argues that Turner failed to carry her burden of opposing the summary judgment motion diligently. This argument is belied by the record which demonstrates that, in her memorandum opposing the motion, Turner argued that the second stop and detention by Robertson was not shielded from liability under § 97-23-95. This Court finds that this argument adequately carried Turner's burden of pointing out a triable issue of fact. *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 364 (Miss. 1983) (explaining that the non-movant must bring forth "significant probative evidence demonstrating the existence of [a] triable issue of fact").

## VI.

¶24. Because Robertson watched as the security guard detained and questioned Turner and yet failed to find out what the security guard discovered before he detained Turner a second time, we hold that Hudson Salvage exceeded the immunity provided under § 97-23-95. The summary judgment motion was erroneously granted. Accordingly, we reverse and remand.

¶25. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. WALLER, J., NOT PARTICIPATING.**