537 So.2d 431 (1988)
Dennis W. MINK and Betty G. Mink
v.
ANDREW JACKSON CASUALTY INSURANCE CO.
No. 58175.
Supreme Court of Mississippi.
December 21, 1988.
Everette Verhine, Vicksburg, for appellants.
R. Andrew Taggart, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ZUCCARO, JJ.
PRATHER, Justice, for the Court:
Dennis W. and Betty G. Mink, owners of a cabin located in Holmes County, brought this action in the Circuit Court of Humphreys County, for the alleged wrongful failure to pay by the defendant, Andrew Jackson Casualty Insurance Co., under the terms of an insurance policy. The claim arose when the plaintiffs' cabin burned to the ground. Both parties filed motions for summary judgment, and the trial court granted the defendant's motion. The plaintiffs now perfect their appeal to this Court and assign as error the following:
(1) The trial court erred in denying the motion for summary judgment as to liability on behalf of the appellants and likewise erred in granting the motion for summary judgment by the appellee.

I.
On or about September 15, 1984, the appellant Dennis Mink purchased an insurance policy from the Belzoni Insurance Company Agency in Belzoni, Mississippi, covering a dwelling located on Bee Lake in Holmes County, Mississippi. The policy allegedly provided coverage in the amount of $20,000 on the dwelling and $10,000 on the contents. This transaction was handled by Thomas Russell, the general agent and owner of Belzoni Insurance Agency. Russell was a licensed general insurance agent for several companies, including but not limited to Audubon Insurance Company and the appellee, Andrew Jackson Casualty Insurance Company.
On or about October 15, 1984, Russell placed the appellants' insurance policy covering the cabin with the Audubon Insurance Company as a rider added to the appellants' homeowners' policy. Also, on or about October 15, Russell purchased a one-half interest in the dwelling located at Bee Lake from the appellants and paid them $10,000 for his one-half interest. On or about October 26, 1984, Russell received notice from the Audubon Insurance Company *432 that it was cancelling the coverage on the dwelling at Bee Lake which had been added to the appellant's homeowner policy, because the dwelling was located outside the three mile limit of a Class 8 town.
After the cancellation of the rider attached to the Audubon Insurance Company policy, Russell, in his capacity as general agent for the appellee, instructed his secretary and/or his wife to type an insurance policy covering the cabin and to place the coverage with the appellee. Through an error or misunderstanding, the policy was not immediately issued. The policy was to have been for $10,000 on the residence and $5,000 on the contents, which represented the appellant's fifty percent interest in the cabin.
At the same time Russell purchased the fifty percent interest in the cabin, he placed $10,000 worth of coverage on the cabin and $5,000 on the contents, thereby covering his fifty percent interest. This policy was with Lumbermens Mutual Insurance Company. On or about January 31, 1985, Russell became aware that the policy with the appellee covering the cabin was not actually in effect. Allegedly on that same day, Russell typed out a policy with the appellee covering the cabin on Bee Lake.
On or about February 4, 1985, the cabin was totally destroyed by fire. Russell and the appellee's adjuster Byrd Sorrells, Jr. inspected the dwelling and found it to be a total loss. Sorrells filed a report which was sent to both the appellee and Lumbermens Mutual. In his report he stated that there were no suspicious circumstances surrounding the fire.
Russell claims that Lumbermens Mutual paid him for his fifty percent interest in the dwelling, but there is also a memorandum contained in the record from Sorrells to Mary Lee Smith of the Andrew Jackson Insurance Company which details possible problems with paying off Russell's claim. In a letter dated June 7, 1985 the appellee informed the appellants that they were denying coverage for a variety of reasons. Among the reasons given were (1) that the property attemped to be covered was encompassed within classifications of prohibited dwellings as per the company's underwriting guidelines, and (2) that the proposed coverage was not submitted to the company until after the date of loss although the policy was dated January 31, 1985, and was signed by Agent Russell.
On November 5, 1985 the appellants filed suit in the Circuit Court of Humphreys County, demanding payment of their claim and seeking punitive damages. After numerous motions, forms of discovery, interrogatories and depositions had been taken, the appellants filed a motion for summary judgment as to liability, which was refused. The appellee then filed a motion for summary judgment, which was granted. The appellants then perfected their appeal to this Court.

II.

DID THE TRIAL COURT ERR IN DENYING THE MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ON BEHALF OF THE APPELLANTS AND LIKEWISE ERR IN GRANTING THE MOTION OF SUMMARY JUDGMENT BY THE APPELLEES?

A.

THE LAW OF SUMMARY JUDGMENTS
The starting point for any analysis of a case which was decided on a summary judgment motion is Rule 56 of the Mississippi Rules of Civil Procedure, which deals specifically with summary judgments. The relevant portion of this rule for our case reads as follows:
(c) Motion and Proceedings thereon. The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law. A *433 summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages. (Emphasis added).
Thus, if there are material facts at issue, summary judgment is not proper.
The leading case by this Court dealing with the issue of summary judgments and Rule 56 is Brown v. Credit Center Inc., 444 So.2d 358 (Miss. 1983). In that case this Court held:
A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Id. at 362. (Emphasis added). (Quoting Comments Rule 56, Mississippi Rules of Civil Procedure).
Therefore, as an appellate court we are only allowed to make the determination of whether there are material facts which would preclude the granting of summary judgment; it is not our function to try these disputed issues of fact. See also, Pope v. Schroeder, 512 So.2d 905, 908 (Miss. 1987); Mississippi Road Supply v. Zurich-American Insurance Co., 501 So.2d 412, 414 (Miss. 1987).
Since a summary judgment serves to effectively terminate a lawsuit, they should only be "granted with great caution". Brown, supra, at 363. In a recent case this Court expanded that idea by stating the following:
All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment is sought should be given the benefit of every reasonable doubt. Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss. 1986).
It is also important to note that Rule 56 requires that before a summary judgment can be granted there must be no genuine issue of "material" fact. The question then becomes, what is a "material" fact? This Court has recently held that a material fact "tends to resolve any of the issues, properly raised by the parties." Mississippi Road Supply v. Zurich-American Insurance Co., 501 So.2d 412, 414 (Miss. 1987). This means that if a "material" fact or facts are present in the case, summary judgment should not be granted. In this context, it is helpful to analyze the facts and issues as presented in this case.

B.

THE ISSUES IN THIS CASE
It seems quite clear that Thomas Russell was the general agent for the appellee in this case. The services he provides fall squarely within the provisions of § 83-17-1 of Miss. Code Ann. (1972), which reads as follows:
Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract.
The appellee also admitted that Russell was licensed and empowered to act as their agent in the answer they filed in the case. *434 However, the appellee also claims that since Russell owned a one-half interest in the cabin that burned, he also had acted as the agent for the appellants. They claim that his status as a cotenant in the cabin effectively eliminates his ability to waive any provisions of the standard insurance contract, a right which he would normally have as agent for the appellee. The outcome of this issue alone is dispositive of the case. It is also necessarily a factual determination.
If Russell was acting in his capacity as the agent for the appellee, it is entirely arguable that the appellee would be bound by his actions. This is especially true in light of the fact that he had assured the appellants that he would secure coverage for them.
If a factual determination led to the conclusion that Russell was acting as the agent of the appellants as well as the agent of the appellees, the rights of the appellants to bring this action would be severely limited, if not ruled out altogether. If he was acting in the capacity as the appellant's agent, his acts are imputable to the appellants under general principles of agency law.
In the letter sent to the appellants by John Gough, the Vice-President of Andrew Jackson Casualty Insurance Company, he listed three reasons why the insurance policy as written was null and void. Again, if Russell was acting as the agent of the insurance company it is arguable that he had the authority to waive certain provisions that were normally prohibited by the company. A full list of these dwelling prohibited classes of coverage was provided to each of Andrew Jackson's general agents, including Thomas Russell. However, each agent also had the authority to waive certain provisions of these guidelines. A key factual determination is whether or not Russell had the authority to waive these provisions and if he did, whether he did so properly.
If, on the other hand, Russell was acting as the agent for the appellants, his authority to waive these provisions may have been severely limited if not removed altogether. The trial judge also made a determination that Russell had made certain misrepresentations on the questionnaire he filled out on behalf of the appellants. If he was acting as their agent, these misrepresentations are imputed to them and could serve as a violation of the concealment and fraud provisions of the policy writing guidelines.
This entire discussion is speculative in nature, because no factual determinations were made on this crucial agency issue. An insurance policy is nothing but a contract and it is a well established rule that "where a contract is ambiguous and uncertain, questions of fact are presented which are to be resolved by the trier of facts, and the granting of summary judgment is inappropriate." Dennis v. Searle, 457 So.2d 941, 945 (Miss. 1984). See also Shelton v. American Insurance Co., 507 So.2d 894, 896 (Miss. 1987).
Therefore, it appears that there are at least three "material" issues to be decided in this case, making summary judgment inappropriate. The three issues involved are the exact nature of the agency relationship between Thomas Russell and the appellees, the agency relationship, if any, between Russell and the appellants, and the determination of what meaning is to be given to the waiver and fraud provisions of the insurance policy. These three issues are far too crucial to be decided on a summary judgment motion.

III.
For the foregoing reasons it is the opinion of this Court that the summary judgment granted by the trial court in favor of the appellees should be reversed and this case remanded to the trial court for a full trial on the merits.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
GRIFFIN, J., not participating.