# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01010-SCT

*DORIS ROBINSON*

*v.*

*ROBERT COBB*

### CONSOLIDATED WITH

### NO. 1999-CA-01012-SCT

*DORA MAE JOHNSON*

*v.*

*ROBERT COBB*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/03/1999 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE F. HOLLOWELL, JR. |
| | DAVID RANDALL WADE |
| ATTORNEY FOR APPELLEE: | DAVID D. O'DONNELL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED -7/20/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/10/2000 |

### BEFORE PITTMAN, P.J., WALLER AND COBB, JJ.

### PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This is an appeal from the Coahoma County Circuit Court's granting of summary judgment in favor of the defendant, Robert Cobb ("Cobb"). The plaintiffs, Dora Mae Johnson ("Johnson") and Doris Robinson ("Robinson"), filed wrongful death actions against Cobb, alleging that his negligence in operating his motor vehicle caused the deaths of Murray Robinson and Felix Johnson. The complaints were filed on April 6, 1998. Cobb filed his answer and a motion to dismiss, arguing that the actions were time barred. The circuit court consolidated the actions, and discovery was conducted.

¶2. The circuit court treated Cobb's motion to dismiss as a motion for summary judgment and granted it. In doing so, the circuit court ruled that the "fraudulent concealment" exception did not apply to the statute of limitations in this case. The circuit court found that Robinson and Johnson did not exercise reasonable

diligence in pursuing their claim against Cobb.

¶3. Robinson and Johnson timely filed their appeal to this Court.

## STATEMENT OF FACTS

¶4. On June 6, 1993, Murray Robinson and Felix Johnson were passengers in a truck driven by George Tigue. The Tigue vehicle was traveling west along Alligator-Rena Lara Road in Coahoma County when it struck a tractor-trailer rig driven by Dennis Doom at the intersection of Highway 1 and Rena Lara Road. Robinson, Johnson, and Tigue were all killed in the accident, which was investigated by the Mississippi Highway Patrol ("MHP"). Robinson and Johnson filed wrongful death actions against Dennis Doom which were eventually settled.

¶5. The record reveals that there were two investigating officers from the MHP: Officer Charlie Hudson ("Officer Hudson") and Officer Roy Wooten ("Officer Wooten"). Officer Hudson investigated the traffic accident, while Officer Wooten was in charge of the criminal investigation. Both Officer Hudson and Officer Wooten maintained personal investigative files on the case. Officer Hudson's files, however, were destroyed in a fire.

¶6. On the day of the accident, Tigue and Cobb apparently had an argument regarding the payment for some farm work that Tigue, Robinson, and Johnson had performed for Cobb. According to Cobb, words were exchanged, and Tigue, Robinson, and Johnson left Cobb's farm. Cobb left his home a few minutes later and proceeded down the road behind the Tigue vehicle. Cobb maintained that he caught up with the Tigue vehicle and attempted to pass it. The Tigue vehicle sped up, refusing to let Cobb pass. Cobb asserts that he pulled back in behind the Tigue vehicle. At no time, Cobb maintains, did he chase the Tigue vehicle or fire a weapon aimed at the Tigue vehicle. Cobb, however, admitted to owning a .32 caliber pistol that he kept in his pickup truck.

¶7. The plaintiffs, Robinson and Johnson, paint an entirely different picture. According to the allegations in their complaints, Cobb chased the Tigue vehicle at a high rate of speed while firing shots at it.

¶8. According to the MHP, its investigation did not reveal enough evidence to charge Cobb criminally. As a result, only the accident report was contained in the official MHP file. However, a review of Officer Wooten's private notes reveals a witness, Terry Ingram, who saw Cobb exit his truck with a gun and survey the wreck. The list of witnesses interviewed by the officers included Will Comfort and Johnny Alvin Gray who both identified Cobb as the driver of the vehicle that was chasing the Tigue vehicle on the day of the accident. Will Comfort gave a statement to Officer Wooten in which he stated that he saw the Tigue vehicle being chased by Cobb at approximately 80-85 miles an hour. Comfort recognized Cobb as he leaned out the window. According to Comfort, Cobb had something in his hand, but he could not identify the object.

¶9. Johnny Alvin Gray, who had worked for Cobb and knew him, gave a statement to Officer Wooten in which he identified Cobb as the driver of the vehicle he saw chasing the Tigue vehicle. Gray maintained that the vehicles were traveling between 85 and 100 miles per hour when they passed him.

¶10. Granville Wayne Butler gave a statement to Officer Wooten. The only information given by Butler was that he saw two trucks traveling at a high rate of speed on Alligator-Rena Lara Road the day of the accident.

¶11. John Fulcher ("Fulcher") was hired two weeks after the wreck by the plaintiffs' attorney to investigate the matter. In his affidavit, Fulcher stated that he investigated the wreck for over three years and could find no one who could or would connect Cobb to the wreck. Fulcher further stated that he had contacted Officer Hudson who did not reveal the names of Johnny Alvin Gray, Will Comfort, or Wayne Butler as possible witnesses. According to Fulcher, Officer Hudson did not reveal the name of Officer Wooten as an investigator in the case, nor did he reveal the existence of the personal investigative files kept on the accident. Fulcher repeatedly tried to contact Cobb, who either refused to be interviewed or refused to return his phone calls.

## STATEMENT OF THE ISSUE

**I. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO COBB ON THE PREMISE THAT THE FRAUDULENT CONCEALMENT EXCEPTION DID NOT APPLY IN THIS ACTION TO TOLL THE STATUTE OF LIMITATIONS.**

## STANDARD OF REVIEW

¶12. Initially, Cobb made a motion to dismiss based upon the statute of limitations defense. However, the trial court considered matters outside the pleadings, thereby transforming the motion to dismiss under M.R.C.P. 12(b) to a summary judgment motion pursuant to M.R.C.P. 56.

¶13. This Court conducts a de novo review of a trial court's granting of summary judgment. *Mississippi Dep't of Wildlife, Fisheries, & Parks v. Mississippi Wildlife Enforcement Officers' Ass'n, Inc.*, 740 So.2d 925, 930 (Miss. 1999); *Rush v. Casino Magic Corp.*, 744 So.2d 761, 763 (Miss. 1999). This Court, viewing the evidence in a light most favorable to the party against whom the motion has been made, examines all evidentiary matters before it. *Id.* This Court has further stated that "a motion for summary judgment should be denied unless the trial court finds beyond any reasonable doubt that the plaintiff would be unable to prove any facts to support his/her claim." *Id.* However, if one party swears to one version of events and the another party swears to a different version, summary judgment should be denied. *Id.* The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* "A fact is material if it 'tends to resolve any of the issues, properly raised by the parties.'" *Webb v. Jackson*, 583 So.2d 946, 949 (Miss. 1991)(quoting *Mink v. Andrew Jackson Cas. Ins. Co.*, 537 So.2d 431, 433 (Miss. 1988)(citations omitted)). Further, this Court has said

> All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment is sought should be given the benefit of every reasonable doubt.

*Daniels v. GNB, Inc.,* 629 So.2d 595, 599 (Miss. 1993).

## DISCUSSION OF LAW

**I. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO COBB ON THE PREMISE THAT THE FRAUDULENT CONCEALMENT EXCEPTION DID NOT APPLY IN THIS ACTION TO TOLL THE STATUTE OF**

**LIMITATIONS.**

¶14. In his order granting Cobb's motion for summary judgment, the trial judge found that Robinson and Johnson failed to rebut Cobb's motion with enough "significant, probative evidence" to overcome the motion for summary judgment. It is incumbent upon Cobb as the movant, not Robinson and Johnson, to prove that no material issue of fact exists.

¶15. The trial judge further found that the fraudulent concealment exception did not apply in this case and that Robinson and Johnson failed to prove "due diligence" in their investigation of the fraudulent concealment.

¶16. Robinson and Johnson filed wrongful death actions against Cobb pursuant to Miss. Code Ann. § 11-7-13 (Supp. 1999). It is undisputed that the statute of limitations applicable to this action is the three-year limitations period found in Miss. Code Ann. § 15-1-49(1) (1995) which states that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."

¶17. The accident that claimed the lives of Murray Robinson and Felix Johnson occurred on June 6, 1993. This being the case, the statute of limitations ran on June 6, 1996. However, Robinson and Johnson did not commence this case until April 6, 1998, almost two years after the running of the statute of limitations.

¶18. Robinson and Johnson argue that the statute of limitations did not begin to run in this action until May 16, 1997, the time when Robinson and Johnson discovered that Cobb was involved in the accident. As stated in Miss. Code Ann. § 15-1-67:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67 (1995). Further, "[f]raudulent concealment of a cause of action tolls its statute of limitations." ***Myers v. Guardian Life Ins. Co. of America, Inc.,*** 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998). The fraudulent concealment doctrine "applies to any cause of action." ***Id.*** Robinson and Johnson claim that Cobb actively concealed his involvement in the fatal wreck, thereby allowing the fraudulent concealment exception to toll the running of the statute of limitations.

¶19. In order to establish fraudulent concealment, "there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." ***Reich v. Jesco, Inc.***, 526 So.2d 550, 552 (Miss. 1988). Robinson and Johnson must first prove that Cobb "engaged in affirmative acts of concealment." ***In re Catfish Antitrust Litigation***, 826 F. Supp. 1019, 1030 (N.D. Miss. 1993). Robinson and Johnson must also prove that even though they acted with due diligence in attempting to discover Cobb's role in the accident, they were unable to do so. ***Wilson v. Retail Credit Co.***, 325 F. Supp. 460, 465 (S.D. Miss. 1971), *aff'd on other grounds*, 457 F.2d 1406 (5th Cir. 1972).

¶20. Keeping in mind the standard of review this Court applies in reviewing a trial court's grant of summary judgment, the granting of summary judgment was error in this case. Factual issues do exist which preclude summary judgment.

Summary judgment is only granted when the moving party illustrates that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. ***Mink v. Andrew Jackson Cas. Ins. Co.***, 537 So.2d 431, 433 (Miss. 1988). Thus when we review a Rule 56(c) motion that has been granted, **we do not rule on the issues, but rather we determine whether there are issues to be tried**. ***Mink***, 537 So.2d at 433.

*Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 146 (Miss. 1998)(emphasis added); *see also* ***Yowell v. James Harkins Builder, Inc.***, 645 So.2d 1340, 1344 (Miss. 1994).

## Affirmative Acts of Concealment

¶21. Robinson and Johnson must show that Cobb committed affirmative acts of concealment in order to cover up the wrongful death claim. The record shows that rumors were circulating immediately after the accident that the Tigue vehicle was involved in a high speed chase with another unknown vehicle. Some of those rumors indicated that Cobb was driving the chase vehicle. However, the MHP, for whatever reason, failed to substantiate these rumors and, as a result, never filed criminal charges.

¶22. Approximately two weeks after the accident, Robinson and Johnson hired private investigator Fulcher to aid them in the investigation of the fatal wreck. The investigation conducted by Fulcher lasted three years and centered around the involvement of a chase vehicle in the accident and whether Cobb was the driver of that vehicle. Fulcher stated in his affidavit that he "attempted on several occasions to contact and interview Robert Cobb but he refused any interview and failed to return numerous telephone calls."

¶23. Cobb was interviewed by Officer Hudson and Officer Wooten regarding the accident. Cobb denied any involvement in the accident. Cobb did, however, admit to having a conversation with the decedents earlier in the day.

¶24. Cobb also submitted to the trial court an "Itemization of Material Facts" in which he stated that he "cooperated with the investigation of Officers Wooten and Hudson." In response, Robinson and Johnson dispute this fact, stating "[p]laintiffs also dispute that Cobb cooperated with the investigation for the reason that Cobb denied any knowledge or involvement in the accident occurring June 6, 1993."

¶25. Cobb asserts that he cooperated fully with the MHP. However, Robinson and Johnson assert that Cobb's denial to the MHP of his involvement in the fatal wreck constitutes active concealment on Cobb's part. Whether Cobb concealed his participation in the fatal wreck is a fact question that should have been left for jury determination.

## Due Diligence

¶26. After showing that Cobb engaged in affirmative acts of concealment, Robinson and Johnson must show that even though they acted with due diligence in attempting to discover their cause of action, they were unable to do so. There was enough conflicting evidence before the circuit court regarding the due diligence issue to deny the motion for summary judgment.

¶27. Fulcher interviewed everyone who lived within three miles of the intersection where the accident happened, as well as farm laborers working in the area. None of the people interviewed admitted having any personal knowledge that Cobb was actually driving the chase vehicle. However, as will be shown later, a review of Officer Wooten's personal investigative files tells another story.

¶28. Fulcher also interviewed Officer Hudson. Officer Hudson did not reveal the names of the three witnesses who could positively identify Cobb as the driver of the chase vehicle: Will Comfort, Johnny Alvin Gray, or Wayne Butler. Officer Hudson also failed to disclose the name of Officer Wooten, the officer conducting the criminal investigation, as well as the existence of both officers' personal investigative files.

¶29. More importantly, Fulcher tried several times to interview Cobb, but Cobb repeatedly refused to be interviewed. Cobb also failed to return phone calls to Fulcher.

¶30. Only after Robinson and Johnson filed wrongful death actions against Dennis Doom ("Doom"), the driver of the other vehicle involved in the wreck, did they learn enough information to file suit against Cobb. In the Doom actions, Robinson and Johnson were represented by George Hollowell, Jr., ("Hollowell"), with Doom being represented by Michael Lewis ("Lewis").

¶31. Hollowell, who actually hired Fulcher to investigate the wreck, interviewed William Tigue, a relative of the three men killed in the wreck. William Tigue had heard rumors that Cobb was involved in the wreck, but he could get no one to come forward and identify Cobb as the driver of the chase vehicle. Furthermore, the plaintiffs, Robinson and Johnson, had no personal knowledge that Cobb was involved in the wreck. Hollowell did not learn of the existence of Officer Wooten or his private investigative file until he was contacted by J.C. Patton. Patton represented Lucille Outlaw, the heir at law of Tigue, the driver of the truck, in her suit against Doom. This information did not come to Hollowell's attention until after the May 16, 1997, deposition of Officer Hudson.

¶32. Lewis, the attorney representing Doom, conducted an investigation of the accident. During the investigation, Lewis discovered that the only information contained in the MHP file of the accident was the actual accident report. No mention was made of Officer Wooten or the criminal investigation surrounding the accident.

¶33. In the Doom action, Patton took the deposition of Officer Hudson on May 16, 1997. Lewis attended the deposition. At that time Officer Hudson first mentioned several witnesses who could possibly place Cobb as the driver of the chase vehicle. However, Officer Hudson was unable to name those witnesses. According to Officer Hudson, Officer Wooten actually conducted the interviews of the witnesses and kept all the interview notes.

¶34. Lewis's work records reveal that he had knowledge of Officer Wooten and his private investigative file on September 25, 1996. It is unclear from the record how Lewis came to have knowledge of Officer Wooten's existence. Lewis attempted to obtain Officer Wooten's investigative file but was told by Officer Wooten that he required a subpoena before turning the file over to Lewis.

¶35. On May 22, 1997, Lewis interviewed Officer Wooten for the first time. At that time, Lewis learned the names of the witnesses who could name Cobb as the driver of the chase vehicle. Officer Wooten was finally deposed on June 23, 1997. Officer Wooten produced a file of investigative notes he had accumulated during the criminal investigation, which he had kept in his private files. For whatever reason, they were not made a part of the official MHP file.

¶36. Cobb points out that the "[p]laintiffs continue to acknowledge that they were on 'inquiry notice' of Cobb's alleged involvement only weeks after the subject accident." Cobb then argues that inquiry notice always triggers the duty of due diligence, regardless of the facts of the case.

¶37. Whether the duty is triggered at the time of the notice inquiry is a fact question properly left for a jury. *In re Catfish Antitrust Litigation*, 826 F. Supp. at 1031. Food distributors brought an action against catfish producers alleging price fixing on different catfish products. The food distributors alleged that the catfish producers engaged in fraudulent concealment from 1981 to 1990 thereby tolling the statute of limitations in the case. The food producers argued that they had no notice of the price fixing until the United States Department of Justice, Antitrust Division, filed documents in January, 1992, alleging price fixing conspiracies. *Id.* The food producers asserted "that as soon as the duty of due diligence was triggered, they acted with deliberate speed." *Id.* The court ruled that "[i]n any event, whether [the food producers'] duty was triggered before or immediately after January 1992, is a question of fact that need not and should not be decided on a motion to dismiss." *Id.* (citing *Vanderboom v. Sexton,* 422 F.2d 1233, 1241 (8th Cir. 1970)).

¶38. Whether Robinson and Johnson were diligent in their efforts to discover Cobb's participation in the fatal wreck is a question of fact, not one of law. Therefore, the grant of summary judgment was error in this case.

## CONCLUSION

¶39. As this Court has stated, "summary judgment is not a substitute for the trial of disputed facts." *Mink*, 537 So.2d at 433 (quoting *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362 (Miss. 1983)). This Court "cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." *Id.*

¶40. Summary judgment was erroneously granted in this case. Cobb swears to one version of events, whereas Robinson and Johnson swear to another. Further, whether Robinson and Johnson acted with due diligence is a fact question properly left for the jury. The judgment of the Coahoma County Circuit Court is reversed, and this case is remanded to the Coahoma County Circuit Court for proceedings consistent with this opinion.

¶41. **REVERSED AND REMANDED.**

**PRATHER, C.J., BANKS, P.J., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**