ROBERTS, J.,
 

 for the Court.
 

 SUMMARY OF THE CASE
 

 ¶ 1. Pamela Tucker raised products liability claims for failure to warn and defective design against two separate manufacturers of industrial equipment after their products were involved in an explosion, which will be described in greater detail, that occurred at her place of employment. The Alcorn County Circuit Court granted summary judgment against Tucker after it found that her expert was not qualified to give an opinion regarding whether the warnings at issue were adequate. Subsequently, the circuit court allowed the manufacturers to designate an expert after the expiration of an agreed scheduling order, and the circuit court granted summary judgment against Tucker’s defective-design claims. Aggrieved, Tucker appeals. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Vernon Smith Manufacturing, Inc., (“Smith”) is a cabinet manufacturing company in Alcorn County, Mississippi. Smith purchased an industrial sander manufac
 
 *124
 
 tured by Timesavers, Inc. At a separate time and place, Smith purchased a dust collection system from Rees-Memphis, Inc. That dust collection system consisted of covered barrels, and it was used in conjunction with the sander. That is, Rees-Memphis’s dust collection system collected and stored sawdust produced by Timesavers’ industrial sander. However, the sander and the dust collection system were not part of a package.
 

 ¶ 3. In July 2001, Smith employees used the sander on lacquered wood. Tucker, a Smith employee, smelled “something kind of funny,” but it did not smell like smoke. A supervisor suspected that the dust barrels were full, so he ordered two employees to empty them. When the employees removed the top of one of the dust barrels, the sawdust inside combusted and caused an explosion. Tucker suffered severe burns over most of her body.
 
 [1]
 

 ¶ 4. Soon afterward, mechanical engineer Jeffrey Shenefelt, Ph.D., inspected the sander and the dust collection system. Dr. Shenefelt later reported that the dust collection system was too close to the sander and that it was “not a good idea to place a dust collection system adjacent to a machine because your [sic] placing a possible ignition source (machine) too close to a fuel supply (dust).”
 

 ¶ 5. Dr. Shenefelt also reported that he found “a danger sticker on the machine indicating that dust can explode and thus material that may cause sparks should not be sanded.” Dr. Shenefelt found “two additional danger stickers, four warning stickers and a notice on the sander.” Further, Dr. Shenefelt found “no warning about sanding materials that are lacquered.” According to Dr. Shenefelt, “this [was] a shortcoming on the sander manufacturer.” As for the cause of the explosion, Dr. Shenefelt reported the following:
 

 I believe as the sanding of the lacquered boards proceeded, lacquer built up on the first belt. As the lacquer built up, the belt became very smooth. The smooth belt in turn did not remove material, but melted the lacquer off the wood becoming increasingly smooth and thus generating heat. The heat generated between the first belt and the lacquered wood was sufficient to cause the lacquer to burn and thus produce smoke. Meanwhile, the second belt continued to remove enough lacquer and wood for the employees to conclude there was not a problem within the sander. This situation is one the manufacturer of the sander should have anticipated and therefore a warning should have been placed on the machine to inform users that sanding finished wood could “gum” up the sanding belts and produce extreme heat.
 

 ¶ 6. Dr. Shenefelt then investigated the dust collection system and the area adjacent to the sander. Dr. Shenefelt was “concerned by the lack of warnings on the system.” That “concern[ed][him] greatly because [he felt] a person should be warned not to open a dust collection system if a fire is suspected.” Dr. Shenefelt opined that “this type of warning would have been the best way to prevent the accident from occurring.”
 

 ¶ 7. On May 13, 2002, Tucker filed her complaint. Tucker claimed that Rees-Memphis negligently designed, constructed, and manufactured the dust collection system. Tucker also claimed that Rees-Memphis failed to adequately warn people of the defects in and dangerous propensities of the dust collection system. That is, Tucker claimed Rees-Memphis failed to place proper warning labels on the dust
 
 *125
 
 collection system. Finally, Tucker claimed Rees-Memphis breached the express and implied warranties of merchantability. Tucker raised similar claims against Time-savers, including the claim that Timesav-ers failed to adequately warn operators of the dangers that accompanied using the sander on lacquered wood.
 

 ¶ 8. Rees-Memphis and Timesavers denied liability. On December 13, 2002, Tucker, Rees-Memphis, and Timesavers entered an agreed scheduling order. The agreed scheduling order set forth discovery deadlines as well as deadlines for the designation of expert witnesses. The agreed scheduling order also provided that the deadlines could not be extended — even by agreement — without the circuit court finding that there was good cause for an extension. Tucker later designated Dr. Shenefelt as an expert witness.
 

 ¶ 9. Timesavers subsequently filed a motion for summary judgment. Among a litany of other arguments, Timesavers argued that summary judgment was appropriate because Dr. Shenefelt: (a) did not cite authority or guidelines that required placing a warning sticker on the sander that alerted operators to avoid sanding lacquered wood, (b) was not qualified to testify regarding the adequacy of warnings because he is a mechanical engineer and not an expert on warnings, and (c) admitted that warning labels are clearly attached to the sander.
 

 ¶ 10. On September 12, 2005, Tucker filed a motion for a continuance to respond to Timesavers’ motion for summary judgment. Within that motion, Tucker stated that a trial on the matter had been continued “due to problems [Tucker] was having with Dr. Jeff Shenefelt, her designated expert.” Tucker also mentioned that her attorney consulted with Dr. Richard Forbes of Mississippi State University and anticipated retaining Dr. Forbes once he had an opportunity to review “pertinent material.” The circuit court granted Tucker’s motion for continuance.
 

 ¶ 11. Approximately two weeks later, Tucker filed a motion to reopen designation of experts. According to Tucker, her attorney sought to substitute mechanical engineer Richard Forbes, Ph.D., for Dr. Shenefelt. Tucker reported that Dr. She-nefelt had moved several times since she originally designated him as an expert, and her attorney had been diligently, but unsuccessfully, trying to communicate with him.
 

 ¶ 12. Timesavers opposed Tucker’s motion. According to Timesavers, Tucker’s attempt to reopen designation of experts was a clandestine tactic to manufacture genuine issues of material fact in an effort to defeat Timesavers’ motion for summary judgment. The circuit court was not persuaded by Timesavers’ argument. It ultimately granted Tucker’s motion to reopen designation of experts and allowed Tucker to designate Dr. Forbes as an expert witness.
 

 ¶ 13. Dr. Forbes shared Dr. Shenefelt’s opinion that: (a) the explosion and Tucker’s resulting injuries were causally related to defects in Timesavers’ sander and Rees-Memphis’s dust collection system; (b) neither the sander nor the dust collection system contained appropriate warnings regarding removing the barrels from the drum; (c) neither the sander nor the dust collection system contained a spark detection and suppression system; and (d) the sander did not contain a warning to avoid using the sander on treated wood.
 

 ¶ 14. The next notable procedural volley in this case began when Rees-Mem-phis filed a motion for summary judgment. Approximately one month later, Timesavers filed a supplemental motion for summary judgment in conjunction with
 
 *126
 
 a motion to strike Dr. Forbes’s expert testimony. Timesavers argued that Dr. Forbes’s testimony was inadmissible as an expert opinion. Broadly speaking, Time-savers barrage of arguments included claims that: (a) Dr. Forbes was not qualified to testify regarding the adequacy of warning; (b) Dr. Forbes’s investigation was inadequate because he never personally inspected the sander, dust collection system, or the accident scene; and (c) Dr. Forbes used an insufficient methodology for arriving at his opinion.
 

 ¶ 15. On July 17, 2007, the circuit court conducted a hearing on (a) Timesavers’ motion to strike Dr. Forbes’s testimony, (b) Rees-Memphis’s motion for summary judgment, and (c) Timesavers’ original and supplemental motions for summary judgment. Without elaborating on the basis of its decision, the circuit court ultimately struck Dr. Forbes’s expert testimony regarding the adequacy of warning, granted both Rees-Memphis’s and Timesavers’ motions for summary judgment regarding Tucker’s adequacy of warnings claim. However, the circuit court denied the motions for summary judgment as pertaining to Tucker’s defective-design claims.
 

 ¶ 16. The case proceeded on Tucker’s defective-design claim, and shortly before trial, Rees-Memphis — later joined by Ti-mesavers — filed a renewed motion for summary judgment regarding Tucker’s remaining defective-design claims. Rees-Memphis attached the affidavit of John M. Cholin, M.E.E., to its renewed motion for summary judgment.
 
 [2]
 
 Cholin basically stated that Tucker’s employer, Smith, was obligated to “design and utilize ... other means of explosion hazard management, such as deflagration suppression or defla-gration venting, to protect the occupants.” That is, Cholin stated that neither Rees-Memphis nor Timesavers had a duty to provide an ignition suppression system with the industrial sander or the dust collection system.
 

 ¶ 17. Tucker responded to Rees-Mem-phis and Timesavers’s renewed motion for summary judgment and moved to strike Cholin’s expert affidavit testimony. Tucker noted that all parties had previously entered an agreed scheduling order, and pursuant to that order, Rees-Memphis and Timesavers were obligated to designate their experts on or before April 15, 2003. Tucker further noted that there had been multiple extensions regarding completion of discovery, but none of those extensions allowed Timesavers or Rees-Memphis to designate an expert outside the predetermined deadline.
 

 ¶ 18. The circuit court conducted a hearing on Tucker’s motion to strike along with Rees-Memphis and Timesavers’ renewed motion for summary judgment. The circuit court denied Tucker’s motion to strike and did not elaborate on the rationale for its decision. The circuit court also granted Rees-Memphis and Timesav-ers’ motion for summary judgment. According to the circuit court:
 

 The [National Fire Protection Association] 664, by its express language, places the duty not on the manufacturer of equipment but on the owner of a woodworking facility to design, obtain, and install such equipment as may be necessary to protect the facility and its occupants, including a spark detector and extinguisher system if such is reasonably necessary for the protection of the facility and its occupants. NFPA 664 specifically states “[t]his standard con
 
 *127
 
 tains the minimum requirements for the proper construction and protection of facilities that handle, store or process wood or wood products that produce or utilize finely divided wood particles or wood fibers.”
 

 Tucker appeals the circuit court’s order granting summary judgment in favor of Rees-Memphis and Timesavers.
 

 STANDARD OF REVIEW
 

 ¶ 19. This Court conducts a de novo review of orders granting or denying summary judgment.
 
 Mantachie Natural Gas Dist. v. Miss. Valley Gas Co.,
 
 594 So.2d 1170, 1172 (Miss.1992). According to Rule 56(c) of the Mississippi Rules of Civil Procedure, a circuit court may grant summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” “A fact is material if it ‘tends to resolve any of the issues, properly raised by the parties.’ ”
 
 Webb v. Jackson,
 
 583 So.2d 946, 949 (Miss.1991) (quoting
 
 Mink v. Andrew Jackson Cas. Ins. Co.,
 
 537 So.2d 431, 433 (Miss.1988)).
 

 ¶ 20. The moving party bears the burden of showing that no genuine issue of material fact exists.
 
 Tucker v. Hinds County,
 
 558 So.2d 869, 872 (Miss.1990). Additionally, the circuit court must view the evidence in the light most favorable to the non-moving party.
 
 Russell v. Orr,
 
 700 So.2d 619, 622 (Miss.1997). We must consider a motion for summary judgment with a skeptical eye, because it is better to err on the side of denying the motion.
 
 Ratliff v. Ratliff,
 
 500 So.2d 981, 981 (Miss.1986).
 

 ANALYSIS
 

 I. ADEQUACY OF WARNINGS
 

 ¶ 21. The circuit court struck the testimony of Dr. Forbes, Tucker’s expert, on the basis that Dr. Forbes — a mechanical engineer — was not an expert as to what warnings must be posted on machinery. Effectively, Tucker then had no expert to support her failure to warn claim. Tucker claims the circuit court erred. We review a circuit court’s decision to exclude expert testimony pursuant to the abuse of discretion standard.
 
 Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 34(¶ 4) (Miss.2003). “Therefore, the decision of a trial judge will stand ‘unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ”
 
 Id.
 

 ¶ 22. Pursuant to Mississippi Rule of Evidence 702:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
 

 “When expert opinion evidence is offered, there are three factors which must be considered: (1) whether the subject matter of the proffered testimony is of the sort on which expert opinion evidence will assist the finder of fact; (2) whether the area of expertise is scientifically established so that valid opinion may be produced within that area; and, (3) finally, whether the witness is qualified.”
 
 McCaffrey v. Puckett,
 
 784 So.2d 197, 201(¶ 11) (Miss.2001) (internal quotations omitted).
 

 ¶ 23. At issue is whether the circuit court erred when it found that Dr. Forbes
 
 *128
 
 was not qualified to testify regarding the adequacy of warnings. Dr. Forbes is a professor of mechanical engineering at Mississippi State University. According to his resume, as of January 2006, he had “[e]xtensive experience in basic and applied thermal research.” Additionally, he “served as principal and co-principal investigator on several solar and other energy related projects.” As for the subjects of his courses, he taught “heat transfer, fluid mechanics, solar energy, and mechanical systems for buildings.” Dr. Forbes’s resume reveals that he is unquestionably an expert in mechanical engineering, but he has no particular training or expertise regarding whether warnings are adequate. Accordingly, we find no merit to this issue.
 

 II. DEFECTIVE DESIGN
 

 ¶ 24. After the hearing on the first motion for summary judgment, the circuit court denied Rees-Memphis and Timesav-ers’ motion for summary judgment on the defective-design issue. Rees-Memphis and Timesavers renewed their motion for summary judgment on the defective-design issue. However, Rees-Memphis and Ti-mesavers were allowed to designate Cholin as an expert in their renewed motion for summary judgment.
 

 ¶ 25. The parties entered an agreed scheduling order on December 3, 2002. That agreed order provided deadlines for Tucker’s designation of experts, Rees-Memphis’s and Timesavers’ designation of experts, a discovery deadline, and a deadline for the filing of motions. The order also stated that those deadlines could not be extended by agreement of the parties, but only by permission of the circuit court upon a demonstration of good cause. There were several amendments to the scheduling order, but none of them extended the time to designate an expert. Additionally, each amendment provided that all other deadlines remained in full force.
 

 ¶ 26. On January 27, 2006, the circuit court entered an order allowing Tucker additional time to designate an expert. That order provided that Tucker had thirty days from that date to designate any additional experts. Further, Rees-Mem-phis and Timesavers had thirty days from Tucker’s designation to designate any additional experts of their own. Tucker designated her additional expert on February 22, 2006. Rees-Memphis and Timesavers had thirty days from that date to designate additional experts.
 

 ¶ 27. Cholin’s name was first mentioned when Rees-Memphis filed its supplemental answers to interrogatories on April 19, 2007. Timesavers filed its supplemental interrogatory responses on June 22, 2007. Timesavers also listed Cholin as an expert in those discovery responses. Tucker notes that neither Rees-Memphis nor Ti-mesavers requested leave of the circuit court to designate Cholin out-of-time.
 

 ¶ 28. The agreed order required that the circuit court only allow late designation of an expert upon a finding of good cause for the late designation. Neither Rees-Memphis nor Timesavers ever submitted any reasoning for their late designation of Cholin. The circuit court never expounded on what it considered to be good cause. “Good cause” is a finding of fact “entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination.”
 
 LeBlanc v. Allstate Ins. Co.,
 
 809 So.2d 674, 676(¶ 9) (Miss.2002). Suffice it to say, the record does not indicate what constituted good cause or even what the good cause might have been. Rees-Memphis and Ti-mesavers never submitted any reason for their delay, and the circuit court never made a finding of good cause. We cannot conduct a deferential review of a finding
 
 *129
 
 that does not exist.
 
 [3]
 
 However, we must conclude by inference that the circuit court judge found good cause for Cholin’s late designation because he considered Cholin’s affidavit in reaching his conclusion as to Rees-Memphis’s and Timesavers’ second motion for summary judgment. We further note that although Tucker made a motion to strike Cholin’s affidavit, Tucker never requested additional time to designate an additional expert to rebut Cholin.
 

 ¶ 29. Assuming, for the sake of discussion, that Rees-Memphis and Time-savers should have been precluded from designating Cholin as an expert after the expiration of the time limit in the agreed scheduling order, Tucker cannot overcome the fact that NFPA 664, which Tucker claimed established Rees-Memphis and Ti-mesavers’ duty to include an ignition suppression system into their respective designs, actually places no duty upon Rees-Memphis or Timesavers.
 
 [4]
 

 ¶ 30. NFPA 664(1.1) provides that “this standard contains the minimum requirements for the proper construction and protection of
 
 facilities
 
 that handle, store[,] or process wood or wood products that produce or utilize finely divided wood particles or wood fibers.” Appendix A-l-1 of NFPA 664 states that “[s]uch facilities include, but are not limited to ... woodworking plants.” Cholin, the expert who chaired the committee that revised NFPA 664, explained that NFPA 664 applies to Tucker’s employer, Smith. It does not apply to Rees-Memphis or Timesavers. In other words, there is no genuine issue of material fact regarding whether NFPA 664 places a duty to include an ignition suppression system upon Rees-Memphis or Timesavers. We find no merit to this issue.
 

 ¶ 31. THE JUDGMENT OF THE AL-CORN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . Tucker received workers’ compensation benefits for a time, but eventually, she was able to return to the workforce at Smith. She later found employment elsewhere.
 

 [2]
 

 . "M.E.E.” is an acronym indicating that Cholin has a master’s degree in electrical engineering.
 

 [3]
 

 . It is reasonable to conclude that the circuit court denied Tucker’s motion to strike-and therefore found good cause for Cholin's late designation-because it had allowed Tucker to designate an expert after the expiration of the deadline set forth in the agreed scheduling order. It is also reasonable to conclude that the circuit court found good cause for designating Cholin after the deadline because the circuit court recognized that application of NFPA 664 was dispositive of this case and Cholin had particular knowledge of NFPA 664 in that he served as the chairman of the “technical committee on wood and cellulosic materials processing” that revised NFPA 664. To be entirely clear, we do not find or decline to find that to be good cause. We mention this merely for clarity's sake.
 

 [4]
 

 . Rees-Memphis merely manufactured a dust collection system. That dust collection system may or may not be used to collect combustible material. Timesavers merely manufactured a sander. That sander may or may not be used on combustible material, and it may or may not be used in conjunction with a dust collection system. Inclusion of an ignition suppression system would increase the cost of purchasing either piece of equipment and not every purchaser would require such a system.