629 So.2d 595 (1993)
Willie B. DANIELS
v.
GNB, INCORPORATED and Southern Battery Company of Mississippi, INC.
No. 91-CA-0916.
Supreme Court of Mississippi.
December 16, 1993.
*596 Don Barrett, Barrett Law Office, Lexington, for appellant.
Robert J. Dambrino, III, Aultman Tyner McNeese & Ruffin, Michael Clayton Barefield, Hattiesburg, Forest M. Dantin, Dantin & Dantin Firm, Columbia, for appellees.
Before HAWKINS, C.J., and SULLIVAN and SMITH, JJ.
*597 SULLIVAN, Justice, for the Court:
Willie B. Daniels (Daniels) brought suit against GNB, Incorporated (GNB) and Southern Battery Company of Mississippi, Inc. (Southern Battery), alleging that the two companies are strictly liable to him for injuries he received when a battery, manufactured by GNB and distributed by Southern Battery, exploded in his face blinding him in his left eye. The Marion County Circuit Court granted summary judgment in favor of GNB and Southern Battery on August 30, 1991. Daniels now raises the following error on appeal:
The trial court erred in granting summary judgment in favor of GNB and Southern Battery.

FACTUAL BACKGROUND
Daniels' affidavit states that in February of 1985 he purchased a battery from James Robinson d/b/a Riverside Alternator and Starter Service (Robinson), and that the battery was a "Magnum Force" brand 12-volt automotive battery. Daniels further states that he was then a trained and experienced automobile mechanic, and that the "Magnum Force" battery was new and in perfect condition. He claims to have watched as one of Robinson's assistants properly installed the battery in his 1979 Ford pickup truck.
The battery was in fine working condition for approximately two months. On or about the morning of April 15, 1985, Daniels attempted to start his truck in order to drive to work. He alleges that when the truck would not crank, he opened the hood, and believing the battery had become discharged or had a loose cable connection, touched the cable with his hand on the positive pole of the battery. At that moment, before he could twist or turn the cable, the battery suddenly exploded blinding him in his left eye. Daniels' wife also witnessed the explosion. Daniels was laid off from Griner Drilling because of his inability to keep up his work after the accident; however, no doctor has said he is 100% disabled.
Daniels started doing work as a mechanic around 1980 at his job, Griner Drilling, where he worked on entire engines. Daniels claims to know the difference between new and reconstituted or used batteries. He states that one reason he knew the battery in question was new was because he saw it in a white battery box. James Smith, employed by Southern Battery, testified in deposition that GNB batteries supplied to Robinson came in brown cartons. However, Daniels claims another reason he knew the battery in question was new was that he saw Robinson get the battery from his office where he keeps the new batteries. James Smith characterized Robinson's place of business as disorderly, and stated that he had "seen the man sell batteries out of junk piles." The battery was the second or third one installed in Daniels' 1979 Ford pickup truck.
Daniels bought the truck used and, after a winter freeze damaged the engine, he purchased and installed a 351 Cleveland engine which he had rebuilt and "hopped up." The engine had formerly been in a Mach 1 Mustang. Robinson, the individual who later sold the battery that exploded to Daniels, was also the person who rebuilt Daniels' starter and alternator when the new "hopped up" engine was installed.
After the explosion, Daniels claims that he showed the exploded battery to Robinson who informed him that there was nothing he could do about the situation. Various affidavits contained in the record indicate that Daniels kept the battery in the back of his truck for a period of time and showed it to co-workers and friends in the City of Columbia. After this period of time, Daniels placed the battery beside his house among other used batteries for a year or two, until approximately the middle of 1987, at which time he disposed of them, including the battery in issue in this case. Daniels stated that he disposed of the batteries because he feared they might be dangerous for his children to come in contact with, and that he could make a few dollars off of the used batteries. Consequently, the battery in question was not available for examination.
The 1979 Ford pickup truck was likewise unavailable as Daniels traded it for a new Dodge in 1985. Daniels testified in deposition that prior to the explosion he had experienced no trouble with the truck; that the *598 battery cables were new when installed; that although he had jump started the truck on a couple of occasions, he had never had to do so with the battery in question; and that he had never tapped or turned the cables on this particular battery before. The battery was never tested after the explosion. Daniels admits that he never read the warnings on the battery.
Daniels also admits that he does not have personal knowledge of who manufactured the battery or how it was built. However, James Smith, who is now and was then employed by Southern Battery (which is now a division of GNB), testified in deposition that any "Magnum Force" battery in Robinson's place of business during the period of time from September of 1984 to March of 1985 would have come from Southern Battery and would have been manufactured by GNB. He also testified that during the period of time surrounding Daniels' purchase of the battery that ultimately exploded, Robinson's business was undergoing financial difficulty, and Robinson was only able to keep 50-100 batteries in stock which took approximately a week to sell.
Robinson's affidavit states that he has always bought batteries from Southern Battery, and that he buys "Magnum Force" brand batteries wholesale and retails them to the public. Robinson sells new and used batteries, and Southern Battery is his sole supplier of new batteries. He remembers Daniels buying a battery from him in February of 1985. Robinson has two affidavits in the record. In his first affidavit dated July 12, 1990, he remembered that the battery he sold to Daniels was a "Magnum Force" brand battery and remembers seeing it after it had blown up. In his second affidavit dated July 30, 1991, he interestingly has no recollection of the source of the battery, or whether the battery he sold Daniels was new or used. The second affidavit goes on to say that Robinson never saw the battery after it had exploded, and that he is not even sure that the one which exploded was a battery he sold to Daniels.
The deposition of James Smith, Southern Battery employee, is helpful with regard to the "Magnum Force" label. He states that those labels belonged to Southern Battery and were labeled as such; i.e., it said on the label "distributed by [Southern Battery Company, Inc.] SBC." He also testified that GNB was aware that the "Magnum Force" labels were being used by Southern Battery.
James Smith's opinion is that batteries do blow up, which can be caused by an over charging of the battery, which creates an oxygen and hydrogen build up in the battery that can be ignited by an external spark. He also states that the explanation of how the battery blew up provided by Daniels is accurate in that Daniels' touching of the positive pole cable caused the external spark which blew up the battery.
David Adams, a GNB employee familiar with the manufacture, design and testing of GNB batteries, submitted an affidavit which states that GNB batteries manufactured in February of 1985 were safe for normal use, and that they would not explode "but for misuse or abuse or neglect." David Adams adds that GNB does not market, identify, or authorize the "Magnum Force" label. However, Smith's deposition makes it clear that GNB did in fact know Southern Battery was applying "Magnum Force" labels to their batteries.
A.K. Rosenhan is a qualified expert in cases involving battery explosions in several courts, including the Northern District Court of Mississippi. He is a registered professional engineer in the State of Mississippi and is a professor at Mississippi State University. Rosenhan submitted an affidavit which says that batteries do explode from internal failure, and not just from misuse, abuse or neglect as stated in David Adam's affidavit. Furthermore, resting on the premise that Daniels' account of the circumstances surrounding the explosion is accurate, which is a reasonable assumption according to Rosenhan, it is his opinion that the battery was unreasonably dangerous because of an internal defect which "generated an overpressure in the battery casing, causing the battery casing and electrolyte to be violently propelled into Mr. Daniels' face." Furthermore, Rosenhan states that an examination of the battery is not necessary for him to determine that it was defective and unreasonably dangerous. *599 Additionally he states that the explosion could have been mitigated if automotive batteries manufactured in the United States were provided with adequate pressure relief in the battery casing.
Rosenhan adds that in his professional opinion, based upon his training and experience, as well as Daniels' affidavit, Daniels received the battery in the same condition as it was when it left the manufacturer. He goes on to state:
It is highly probable that any internal damage to the battery would likewise have caused some noticeable mark or damage visible to Mr. Daniels when he purchased the battery. Also, any damage to the battery in shipment which would have caused an explosion would very probably have manifested itself before two months of use in Mr. Daniels' vehicle.
Furthermore, the actions described by Mr. Daniels in his affidavit do not constitute any type of negligence on his part. No physical or electrical abuse of the battery is indicated, and his action in attempting to check the battery cable for a loose connection is a routine and acceptable practice for a knowledgeable person who finds himself with an automobile that will not start ... It is an acceptable practice to touch or lightly wiggle battery cables to see if they are properly connected to an automotive battery. Certainly a consumer/user should not expect that a battery would explode then.

DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF GNB AND SOUTHERN BATTERY?
This Court reviews the record de novo to determine whether the trial court properly granted a motion for summary judgment. Mantachie Natural Gas District v. Mississippi Valley Gas Company, 594 So.2d 1170, 1172 (Miss. 1992). In our de novo review, this Court
looks at all the evidentiary matters before [us]  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.
Id. at 1172; citing Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762 (Miss. 1989) [citing Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61 (Miss. 1988)]. Furthermore, in Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 433 (Miss. 1988) [citing Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss. 1986)], this Court said:
All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment is sought should be given the benefit of every reasonable doubt.
Id. at 433. A motion for summary judgment should be overruled unless the trial court finds, beyond any reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim. McFadden v. State, 580 So.2d 1210 (Miss. 1991). If facts are in dispute, it is not the province of the trial court to grant summary judgment thereby supplanting a full trial with its ruling. "Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983) [citing The Advisory Committee Comment to M.R.C.P. 56]. In order for there to be genuine issues of material fact, the affidavits and other evidence must be sworn, made upon personal knowledge, and show that the party providing the factual evidence is competent to testify. *600 Palmer v. Biloxi Regional Medical Center, 564 So.2d 1346 (Miss. 1990).
The party moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists, and that they are, based on the existing facts, entitled to judgment as a matter of law. Skelton v. Twin County Rural Elec., 611 So.2d 931, 935 (Miss. 1992); see also, Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss. 1990); Fruchter v. Lynch Oil Co., 522 So.2d 195 (Miss. 1988). "The movant and non-movant bear the burdens of production corresponding to the burdens of proof they would bear at trial." Skelton at 935 [citing Palmer]. Thus, the movant only bears the burden of production where they would bear the burden of proof at trial. Palmer at 1355. Correspondingly, the non-movant, provided they would bear the burden of proof at trial on the issue in question, is responsible for "producing supportive evidence of significant and probative value" in opposition to the motion for summary judgment. Id.
In a strict liability in tort case, the general rule that has been borrowed from the Restatement (Second) of Torts, § 402A (1965) is that:
one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
Coca Cola Bottling Co., Inc. v. Reeves, 486 So.2d 374, 377-78 (Miss. 1986). Furthermore, this Court has
recognized in William Cooper and Nephews, Inc. v. P.V. Pevey, 317 So.2d 406, 408 (Miss. 1975); and Early-Gary, Inc. v. Walters, 294 So.2d 181, 186 (Miss. 1974) that:
before recovery can be had under this section [402A] three elements must be established by the proof:
(1) that the plaintiff was injured by the product, (2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous, and (3) that the defect existed at the time it left the hands of the ... [seller].
Coca Cola Bottling Co. at 378; see also, Hall v. Mississippi Chemical EXP., Inc., 528 So.2d 796 (Miss. 1988). Furthermore, "one who sells or distributes as his own a product manufactured by another is subject to liability the same as though he were its manufacturer." Coca Cola Bottling at 378. Finally, the plaintiff must be able to show not only that the product was defective when it left the hands of the defendant, but that the defective product was the proximate cause of the plaintiff's injuries to make out his prima facie case. Ford Motor Co. v. Mathews, 291 So.2d 169 (1974).
Thus, in order to successfully rebut a motion for summary judgment, Daniels, bearing the burden of proof at trial as indicated supra, would have to produce significant, probative evidence that (1) he was injured by the battery he bought which was manufactured by GNB and distributed by Southern Battery; (2) the injury resulted from a defect in the battery which rendered it unreasonably dangerous; and (3) that the defect existed at the time it left the hands of GNB and subsequently Southern Battery. As previously indicated, the trial court should then have only granted summary judgment in favor of GNB and Southern Battery if persuaded, after viewing all the evidence in a light most favorable to Daniels, that there were no genuine issues of material fact, and that GNB and Southern Battery were therefore entitled to summary judgment as a matter of law. McFadden, 580 So.2d at 1214.
The lower court granted summary judgment in favor of GNB and Southern Battery. The reasons for the court's decision include: (1) no party or witness can state with certainty that GNB was the manufacturer or that Southern Battery was the distributor of the battery in question; (2) this was not the first battery Daniels had problems with in this particular truck; (3) the truck had a "hopped up" engine with a rebuilt alternator and starter; (4) that Daniels never took the battery *601 back to the seller, Robinson, at Riverside Alternator and Starter Service, to show him the battery after it exploded (here the court relies on one of the two affidavits submitted by Robinson  the other one plainly says that Robinson did in fact see the "same Magnum Force battery that [he] had sold to [Daniels] a couple of months earlier. The battery caps were all gone and the battery had the appearance of having blown up."); (5) that although Daniels' expert presented one plausible explanation for the explosion, he didn't take into account the "hopped up" engine and the new alternator and starter; (6) that Daniels disposed of the battery; (7) that the law states that Daniels is responsible for proving the cause of the explosion and resulting damage and that the defendants cannot be held responsible for defects caused by intervening parties; and (8) that based on the absence of the battery for examination and the potential other reasons for the explosion of the battery, Daniels cannot prove with any degree of certainty the cause of the explosion, and hence a jury would be left to mere speculation and conjecture.
Daniels is first responsible for producing significant, probative evidence that the battery that exploded and injured him was manufactured by GNB and distributed by Southern Battery. Robinson (the alleged seller of the battery) has given two affidavits which render conflicting accounts of the circumstances surrounding Daniels' battery purchase and injury. This leaves genuine issues of material fact unresolved and ripe for jury determination. Brown, 444 So.2d at 362.
Whether the battery Daniels bought from Robinson was new or used is a question of fact and is likewise a determination that should be made by a jury. Where one party swears to one version of the matter in issue and the other party says the opposite, an issue of fact sufficient to require denial of a motion for summary judgment is present. Mantachie, 594 So.2d at 1172. Here again, this question will turn on the credibility of Daniels, and must be determined by a jury. Brown, 444 So.2d at 362.
Daniels points to affidavits and depositions in the record which were all sworn, made upon personal knowledge, and show that the party providing the factual evidence is competent to testify. These affidavits and depositions support Daniels' proposition that there are genuine issues of material fact with regard to Southern Battery's use of the "Magnum Force" label, GNB's awareness of that use, and whether, at the time Daniels bought the Battery, a "Magnum Force" battery in Robinson's store would have been manufactured by GNB and distributed by Southern Battery.
Therefore, we find that Daniels met his burden in opposition to summary judgment on the element of showing that the product which caused his injury came from the manufacturer and distributor as alleged in the complaint. Viewing all the evidence in a light most favorable to Daniels, there is significant, probative evidence allowing him to withstand a motion for summary judgment on this particular element of his case.
The trial court, while recognizing that Daniels' expert opinion is one plausible explanation for the explosion that injured Daniels, points out essentially two reasons why this expert opinion is not enough for Daniels to withstand summary judgment on the issues of whether the battery was defective and unreasonably dangerous thereby causing Daniels' injuries, and whether the defect existed at the time it left the hands of GNB and Southern Battery: (1) The truck contained a "hopped up" 351 Cleveland engine that had formerly been in a Mach 1 Mustang, and Robinson, at Riverside Alternator and Starter Service, rebuilt the starter and alternator; and (2) Daniels disposed of the battery sometime during the year of 1987, rendering it unavailable for examination by experts. Thus, the trial court ruled that the plaintiff would not be able to establish causation at trial, and the jury would be left to mere speculation and conjecture.
Daniels' expert, A.K. Rosenhan, relying on the Daniels' affidavit setting forth the events which led to the explosion, and his recognized expertise in the causes of battery explosions, found that in his opinion, if Daniels' description of the circumstances surrounding the explosion is accurate, which he found to be a *602 reasonable assumption, (1) the battery exploded because it was defective and unreasonably dangerous; (2) the battery left the manufacturer and distributor in that defective and unreasonably dangerous condition; and (3) Daniels did not cause the explosion by misuse, abuse or neglect of the battery. Rosenhan specifically states in his affidavit that an examination of the battery in question is not necessary for him to determine that it was unreasonably dangerous and that it left the Defendants' hands in that condition.
Adams, the expert for GNB familiar with the manufacture, design and testing of GNB batteries, submitted an affidavit that GNB batteries were safe at the time Daniels bought the one in question, and that they would only explode from misuse or abuse or neglect. Both defendants in this case, however, recognize that the reasonableness of an expert's opinion and the weight to be accorded thereto are questions of fact for the jury. Ford Motor Co. v. Cockrell, 211 So.2d 833, 837 (Miss. 1968). Furthermore, circumstantial evidence will suffice on the element of showing that the product was defective when it left the hands of the defendants, and that it was in such defective condition at the time of the explosion. Coca Cola Bottling 486 So.2d at 383. This Court stated in Coca Cola:
This circumstantial evidence  of lack of abuse or misuse, of lack of anything other than normal use, and of lack of opportunity for any use or handling at all  is sufficient to allow a reasonable juror to conclude that it was more probable than not that the carton immediately prior to the accident was in substantially the same condition as when it left the hands of Vicksburg Coke. There being as indicated above substantial credible evidence that at the time of the accident the carton was defective, we hold, faithful to Paymaster Oil, [319 So.2d 652] [(Miss. 1975)] that the evidence is sufficient for plaintiff's purposes to establish that the defective condition existed at the time the carton left the hands of Vicksburg Coke.
We recognize that much of what we have said above turns on circumstantial evidence and probabilities drawn therefrom. The probability of the correspondence of the conclusions reached to actual fact has been rendered far more likely by the absence of any credible evidence supporting Vicksburg Coke's view on any of these critical fact issues.
Id. at 383. Both GNB and Southern Battery, as well as the trial court, make much of the fact that the battery in question has been disposed of by Daniels. GNB and Southern Battery cite Powe v. Wagner Electric Sales Corp., 589 F. Supp. 657, 661 (S.D.Miss. 1984) where the district court stated:
The fact that plaintiffs themselves have failed to preserve evidence, namely the master cylinder, places at the plaintiffs' door the failure of proof. Admittedly, where the product which is alleged to be defective is unavailable, the plaintiffs' case is not necessarily made impossible by lack of proof. However, it has been generally held that where the product itself was destroyed or is otherwise unavailable, and there is no other evidence of the defect, that a case for the jury is not made. This would seem to be especially true where the fact that the evidence is missing is the fault of the plaintiffs and not due to the destruction of the product in the collision, or where the product is rendered unavailable by circumstances beyond plaintiffs' control.
Powe at 661 [quoting Annot., Products Liability: Proof of Defect Under Doctrine of Strict Liability and Tort, 51 A.L.R.3d 8, 23-27 (1973)]. The Powe court continued, stating:
At best, the only way this case could ever go before a jury is that the plaintiffs had an accident and had recently had a master cylinder replaced and the accident was a result of a brake failure. There is no way to ascertain as far as this Court can see whether the accident was caused by any other numerous defects that might have existed in the braking system prior to and subsequent to the placing of the master cylinder in the automobile. It is certainly impossible to determine what actually was the defect in this master cylinder.
Id. at 661. GNB also cites Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 289 (5th Cir.1975) (the fact of injury alone does not *603 establish the existence of a defect and therefore liability); and Powe at 661 (the doctrine of strict liability is not the equivalent to res ipsa loquitur).
The trial court essentially relied on the two passages from Powe above to rule in favor of the defendants' motions for summary judgment. It is true that the battery in question was and will forever be unavailable for inspection by experts; and it is also true that the battery is unavailable because Daniels disposed of it.
However, this Court has made it clear that presentation of the product is not essential to meet the burden of proof that the product was defective. See Coca Cola, 486 So.2d at 381 (presenting of the product in question would have been most desirable, but not mandatory since the defective condition was susceptible to proof by the testimony of eyewitnesses). Even the district court in Powe admitted that the plaintiff's case will not necessarily fail for lack of proof because of the unavailability of the product in question. Id. at 661.
With regard to the trial court's concern that there are too many other possibilities for the cause of the explosion, this case is not analogous to Powe. In Powe, a brake failure on the plaintiff's car resulted in injuries to the plaintiff. The plaintiff alleged that the recently replaced master cylinder was the defective product that caused the brake failure. As noted above, the court found that there were too many other possible defects in the braking system that could have caused the injuries.
Contrarily, in the instant case, the battery is what exploded causing Daniels' injuries. It is simply not clear to this Court that because Daniels installed a 351 engine in his truck, and because he had the starter and alternator rebuilt, that his evidence is thereby rendered completely speculative on the issue of whether the battery was defective. The battery blew up, and Daniels' expert testimony concludes that the battery was defective and unreasonably dangerous at the time it left the hands of the respective defendants. Again, judging the expert's testimony and weight to be accorded thereto is the province of the jury. Ford Motor Co. v. Cockrell, 211 So.2d at 837.
The record is silent on the question of what effect the "hopped up" engine and rebuilt starter and alternator would have on the potential explosion of a battery. It is true that Rosenhan's affidavit makes no mention of these facts in setting forth his expert opinion; however, that does not necessarily mean that these facts would have affected his decision. Therefore, this issue is one of genuine material fact that needs to be determined by a jury, and not tried at the summary judgment level by the trial court. Brown, 444 So.2d at 362. The trial court should not have concluded, viewing this evidence in the light most favorable to Daniels, that under none of the facts presented would he be able to prove this element of his case.
It is therefore our opinion that Daniels presented enough evidence to withstand a motion for summary judgment on this issue. Finally, based on the same analysis, Daniels has also sufficiently established proximate cause so as to avoid summary judgment. Accordingly, the judgment of the trial court granting summary judgment is reversed.
REVERSED AND THIS CAUSE IS REMANDED TO THE CIRCUIT COURT OF MARION COUNTY, MISSISSIPPI, FOR A TRIAL BY JURY.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.