# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-02030-SCT

*SHERMEKER POLLARD AND TRELLVION
GAINES, A MINOR, BY AND THROUGH HIS
NATURAL MOTHER, LEGAL GUARDIAN, AND
NEXT FRIEND, SHERMEKER POLLARD*

*v.*

*SHERWIN-WILLIAMS COMPANY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2003 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL CASANO |
| | JOHN TIMOTHY GIVENS |
| | TIMOTHY W. PORTER |
| | PATRICK MALOUF |
| ATTORNEYS FOR APPELLEE: | KATHERINE A. SMITH |
| | JOHN G. CORLEW |
| | PAUL MICHAEL POHL |
| | RICHARD H. DEANE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 02/15/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     The plaintiffs originally filed suit against The Sherwin-Williams Company ("Sherwin-Williams"); NL Industries, Inc.; Martin Floor Covering; Robert Case, individually; Fayette Lumber and Supply Co.; William Darsey, individually; Darsey Hardware Co.; Darsey

Hardware and Furniture Co.; and Hirsh's Store, alleging that Trellvion Gaines ("Trellvion") had been seriously injured by ingesting lead found in paint. Sherwin-Williams is the only defendant in this appeal. Plaintiffs assert liability against Sherwin-Williams by virtue of exposure to Sherwin-Williams-brand paint containing lead and Sherwin-Williams' failure to warn of the dangers caused by scraping paint containing lead in preparation for the application of non-lead paint. The circuit court granted summary judgment in favor of Sherwin-Williams when it adopted the "Report and Recommendation" of a special master. The Court of Appeals affirmed the dismissal solely on the statute of limitations issue. In granting the plaintiffs' petition for writ of certiorari, this Court now considers whether the "minor saving statute" should apply and, if so, whether Sherwin-Williams was otherwise entitled to summary judgment. After due consideration, this Court reverses the judgment of the Court of Appeals and the circuit court's blanket grant of summary judgment, finding that genuine issues of material fact exist as to numerous claims. Therefore, this case is remanded to the trial court for further proceedings in accordance with this opinion.

**FACTS**

¶2.     Trellvion alleges cognitive deficiencies were caused by exposure to paint containing lead in a home built in the 1930s in Fayette, Mississippi. In December of 1978, the home was purchased by Johnny Crawford. In 1979, Doris Gaines, Trellvion's maternal grandmother, moved into the home. By the mid-1980s, Shermeker Pollard, Gaines' daughter, was also living in the home. In 1991, Pollard gave birth to Trellvion. From birth until the home was substantially destroyed by fire on June 4, 1994, Trellvion lived in the home.

¶3. Reverend Martin Lias swore that in the early 1930s, he observed the house being painted with white Sherwin-Williams brand paint.[1] Reverend Lias further swore that it was "lead paint" because "[t]he people that were painting [the house]" told him that.[2] According to Gaines, the exterior and interior of the house had been painted white before she moved in with Crawford. Thereafter, the house was painted by Gaines and Vernon Collier, a local house painter, on numerous occasions between 1979 and 1994. According to Gaines, the home was painted once in the late 1970s, twice in the 1980s, and once in the early 1990s.

¶4. Gaines swore that she and Collier painted the entire inside and outside of the home in the late 1970s, using Sherwin-Williams "lead paint" purchased at Darsey's Hardware in Fayette, Mississippi, along with white exterior "lead paint" which Crawford had at the house. Crawford swore that he had previously purchased ten to fifteen gallons of white Sherwin-Williams "lead paint." Gaines stated the paint she purchased was Sherwin-Williams "lead paint," because that is what she specifically asked for, that is what the label provided, and "[it's] the only paint [she] ever bought." She ordered the paint and Collier picked it up. By affidavit, Collier swore he used "lead containing . . . Sherwin-Williams paints [he] had purchased from Darsey's Hardware" on the Crawford home.[3] Collier asserted that his

_____

[1]Specifically, he stated that "I was down there talking with the boys, and I liked to knocked [sic] the bucket over with the little paint in it and picked it up and looked at it. It was Sherwin-Williams paint."

[2]The special master did not abuse his discretion in treating this testimony as inadmissible hearsay.

[3]Collier did equivocate somewhat on cross-examination in a deposition. However, on direct examination in the same deposition, he confirmed verbatim statements from his affidavit.

3

opinion that the paint contained lead was based upon personal painting experience. Specifically, he stated that "[l]ead is a hardener" and in cleaning up the paint on this project, "[i]t wasn't like the regular other paints when . . . you wipe it and the paint come right on the rag." Gaines said the exterior was painted white, the kitchen was painted blue, and the remainder of the interior was painted pink.

¶5. As to the first 1980s painting, Gaines stated that she and Collier painted the dining room blue, her bedroom pink, and the interior doors white. This "lead paint" was purchased from Porter's in Natchez, although Gaines could not identify the brand of paint.

¶6. Regarding the second 1980s painting, Gaines stated she and Collier painted the den, the interior doors, and frames using Sherwin-Williams brand "lead paint" purchased at the Sherwin-Williams store in Natchez, and she knew the "lead paint" was Sherwin-Williams brand, "because that's what [she] asked for." This testimony was corroborated by her sister, Mildred. Additionally, Collier stated that the bathroom was painted green on this occasion, although he could recall no other details about the paint used.

¶7. Gaines swore that, for the early 1990s painting, she sent Collier to Fayette Lumber and Supply to pick up white and candy stripe colored "lead paint" for the bay windows, but she could not identify a brand. Collier's affidavit provided that:

> even around 1991, I purchased for use, and painted on the house where Trellvion was living when he was diagnosed with lead poisoning, some Dutch Boy, Sherwin-Williams paints and other paints, some of which I believe contained lead, and which were purchased from Darsey's Hardware, Hirsch's Hardware and Fayette Lumber and Supply . . . .

Collier's and Mildred Gaines' deposition testimony was that Sherwin-Williams brand paint was used during this project.

4

¶8. During the painting project in the early 1990s, Trellvion was an infant. Gaines observed Trellvion eating paint chips that were "swept to the side" during the project. In September of 1993, blood tests confirmed that Trellvion had been excessively exposed to lead.

¶9. On November 28, 2000, the Chancery Court of Jefferson County, Mississippi, appointed Pollard as Trellvion's legal guardian for the purpose of asserting the present action. That same day, Pollard filed a complaint in the Circuit Court of Jefferson County, Mississippi, against Sherwin-Williams and the other initial defendants on behalf of herself and Trellvion. Pollard and Trellvion subsequently filed two amended complaints alleging that Sherwin-Williams was liable for damages caused by Trellvion's exposure to "lead paint" and "lead paint" residuum based on strict liability, negligence, fraudulent concealment, and misrepresentation. The second amended complaint specifically provided that:

> 13. In connection with his exposure to an environment containing Defendants' lead during the "exposure period," the minor, Plaintiff, Trellvion Gaines, inhaled or otherwise came into contact with injurious amounts of Defendants' lead, having neither knowledge nor reason to believe that the Defendants' lead which he was living with, near or around was dangerous.
>
> 14. The minor plaintiff was also exposed to lead dust, chips and other debris which resulted from the scraping, sanding and other removal of lead paint from his dwelling which occurred during the required procedure for application of defendants' non-lead based paints.

As a result thereof, the second amended complaint alleged that Trellvion:

> has suffered physical and mental pain and anguish, other mental damages, loss of wage earning capacity and will continue to sustain damages of the above type in the future including, but not limited to, physical and mental pain and anguish, other mental and psychological damages, intellectual, cognitive, and behavioral injury, disability, future medical expenses and loss of the enjoyment of life.

5

Moreover, the second amended complaint alleged that Pollard "has suffered mental pai[n] and anguish in addition to expenses for medical treatment of [Trellvion], expenses in traveling to and from medical treatment for [Trellvion], other monetary, mental and emotional damages and injuries and . . . will continue to sustain damages of the above type in the future . . . ."

¶10. After the parties agreed to the appointment of a special master, Sherwin-Williams filed its motion for summary judgment. On May 5, 2003, the "Special Master's Report and Recommendation" recommended granting Sherwin-Williams' motion for summary judgment. The June 11, 2003 order of the circuit court adopted the "Special Master's Report and Recommendation" and granted Sherwin-Williams' motion for summary judgment. Thereafter, a motion to reconsider was denied and the final judgment of the circuit court dismissed the case with prejudice.

¶11. Before the Court of Appeals, the plaintiffs raised numerous issues, claiming that the circuit court erred in dismissing their claims with prejudice. The issues included:

> ([1]) whether the trial court erred in finding that Sherwin-Williams owed no duty to warn under Mississippi law of the dangers associated with surface preparation on its non-lead-based paint cans when it was foreseeable that lead paint may be scraped off in preparation for applying non-lead-based paint; ([2]) whether the trial court erred in finding that state common law was preempted by the Federal Hazardous Substance[s] Act; ([3]) whether the trial court erred in finding that Sherwin-Williams's lead-based paint was not defectively designed; and ([4]) whether the trial court erred in finding that Pollard['s] . . . claims were barred by the statute of limitations.

*Pollard v. Sherwin-Williams*, 2005 Miss. App. LEXIS 622, at *3-4 (Miss. Ct. App. 2005).

In affirming the circuit court, the Court of Appeals considered only the statute of limitations

issue. After their motion for rehearing was denied by the Court of Appeals, the plaintiffs filed a petition for writ of certiorari with this Court. This Court granted the petition.

## STANDARD OF REVIEW

¶12. "The Supreme Court's review on the grant of certiorari shall be conducted on the record and briefs previously filed in the Court of Appeals and on any supplemental briefs filed." Miss. R. App. P. 17(h). The trial court's grant of a motion for summary judgment is reviewed by this Court *de novo*. *See Wilner v. White*, 929 So. 2d 315, 318 (Miss. 2006).

¶13. The Mississippi Rules of Civil Procedure provide summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c) (emphasis added). The Comment states that Miss. R. Civ. P. 56 "provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are *no fact issues* that need to be tried." (Emphasis added). Conversely, the Comment provides that "summary judgment is *not* a substitute for the trial of *disputed fact issues*. Accordingly, the court cannot try issues of fact on a Rule 56 motion; *it may only determine whether there are issues to be tried*. . . . [I]t cannot be used to deprive a litigant of a full trial of genuine fact issues." (Emphasis added). In *Daniels v. GNB, Inc.*, 629 So. 2d 595 (Miss. 1993), this Court addressed its review of a granted motion for summary judgment as follows:

> [i]n our de novo review, this Court:

looks at all the evidentiary matters before [us] – admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. *The evidence must be viewed in the light most favorable to the party against whom the motion has been made.* If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. *Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite.* In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, *the non-movant would be given the benefit of the doubt.*

[***Mantachie Natural Gas District v. Mississippi Valley Gas Company***, 594 So. 2d 1170, 1172 (Miss. 1992)]. . . . Furthermore, in ***Mink v. Andrew Jackson Casualty Co.***, 537 So. 2d 431, 433 (Miss. 1988) [citing ***Ratliff v. Ratliff***, 500 So. 2d 981 (Miss. 1986)], this Court said:

[a]ll motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion. *When doubt exists whether there is a fact issue, the non-moving party gets its benefit.* Indeed, the party against whom the summary judgment is sought should be given the benefit of every reasonable doubt.

[***Id***.] at 433. A motion for summary judgment should be overruled unless the trial court finds, beyond any reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim. ***McFadden v. State***, 580 So. 2d 1210 (Miss. 1991). If facts are in dispute, it is not the province of the trial court to grant summary judgment thereby supplanting a full trial with its ruling. "*Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried.*" ***Brown v. Credit Center, Inc.***, 444 So. 2d 358, 362 (Miss. 1983) . . . .

***Daniels***, 629 So. 2d at 599 (emphasis added).

## ANALYSIS

**I.** **Whether the circuit court erred in dismissing Pollard's claims on the basis of the statute of limitations and, separately, whether the Court of Appeals erred in holding that the statute of limitations had run in an action where a minor child was an injured party?[4]**

¶14. The plaintiffs argue that the statute of limitations of Miss. Code Ann. § 15-1-49 (Rev. 2003) is tolled by the "minor savings statute," Miss. Code Ann. § 15-1-59 (Rev. 2003), until the minor achieves majority. By contrast, Sherwin-Williams urges this Court to affirm the exception adopted by the Court of Appeals. The Court of Appeals held that Miss. Code Ann. § 15-1-59 was inapplicable "since these claims were filed on behalf of [Trellvion] by and through his natural mother, legal guardian, and next friend . . . ." *Pollard*, 2005 Miss. App. LEXIS, at *7, n. 2.

¶15. The applicable statute of limitations is provided by Miss. Code Ann. § 15-1-49(1), which states:

> (1) [a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years after the cause of such action accrued, and not after.

Miss. Code Ann. § 15-1-49(1).

¶16. However, as to Trellvion's claims, this section must be read in conjunction with Miss. Code Ann. § 15-1-59, the "minor saving statute," which provides:

---

[4]Sherwin-Williams argued *only* that Pollard's claims were barred by the statute of limitations and the special master concluded *only* that "[t]he statute of limitations bars *Shermeker Pollard's* claims." (Emphasis added). Nonetheless, the Court of Appeals ruled that Trellvion's claims were barred by the statute of limitations, an issue not before that court, thus requiring the expansion of this issue.

> [i]f any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

Miss. Code Ann. § 15-1-59 (Rev. 2003).

¶17. Both statutes refer to the accrual date of the cause of action. This Court has determined that "the cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease." *Schiro v. American Tobacco Co.*, 611 So. 2d 962, 965 (Miss. 1992) (quoting *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704, 709 (Miss. 1990)). In September of 1993, blood lead lab tests confirmed significantly elevated readings of lead, indicative of excessive exposure to lead. As such, Trellvion's cause of action accrued no later than September of 1993. As Pollard's claim is derivative, her cause of action accrued no later than September of 1993. As the original complaint was not filed until November 28, 2000, the three (3) year statute of limitations applicable to Pollard's claims had already expired. However, because Trellvion was a minor at the time his cause of action accrued,[5] his claims are tolled by Miss. Code Ann. § 15-1-59.

¶18. While the scope of Miss. Code Ann. § 15-1-59 has been limited,[6] there is no applicable law denying Trellvion protection afforded by the aforementioned statute. In

---

[5]Trellvion was only two (2) years old in September of 1993.

[6]For example, Miss. Code Ann. § 15-1-59 applies only to the limitations of actions found within Chapter 1, Title 15 of the Mississippi Code. *See* *Cole v. State*, 608 So. 2d 1313, 1316 (Miss. 1992).

***Taylor v. General Motors Corp.***, 717 So. 2d 747 (Miss. 1998), this Court recognized the protection afforded by Miss. Code Ann. § 15-1-59 when a father represented his own interests and those of his minor son. *See id*. at 750. In ***Taylor***, the father and son were involved in a car wreck and a Louisiana attorney was hired to represent them both. *See id*. at 747. The lawsuit was filed against the automobile company and an insurer three (3) days prior to the expiration of the three (3) year statute of limitations, but was ultimately dismissed. *See id*. at 747-50. On appeal, this Court affirmed the dismissal with the caveat that:

> the dismissal is *without prejudice* as to the claim of Taylor's minor son, against whom the statute of limitations, pursuant to Miss. Code Ann. § 15-1-59 (1995), does not begin to run until the son attains his twenty first birthday. The minor's claim *remains viable* for the time period should a determination be made to pursue the same.

*Id*. at 750 (emphasis added).

¶19.    "The purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to disability." ***United States Fid. & Guar. Co. v. Melson***, 809 So. 2d 647, 653 (Miss. 2002) (quoting ***Rockwell v. Preferred Risk Mut. Ins. Co.***, 710 So. 2d 388, 391 (Miss. 1998)). As Trellvion was a minor at the time his cause of action accrued, as well as at present, his claims are tolled by the "minor saving statute" and not barred by Miss. Code Ann. § 15-1-49. Therefore, the Court of Appeals erred in barring Trellvion's claims.

11

**II.     Whether the circuit court erred in granting Sherwin-Williams' motion for summary judgment?**

¶20.    The special master's "Report and Recommendation," adopted in its entirety by the circuit court, contains numerous conclusions of law, based upon disputed facts. Specifically, the report finds multiple "undisputed facts," restating nearly verbatim Sherwin-Williams' "Itemization of Not Genuinely Disputed Facts." This is despite Trellvion's "Objections to Defendants Itemization of Facts" ("Objections") controverting material facts, supported by sworn affidavits and deposition testimony, as required by the Mississippi Rules of Civil Procedure. *See* **Daniels**, 629 So. 2d at 599 ("[i]n order for there to be genuine issues of material fact, the affidavits and other evidence must be sworn, made upon personal knowledge, and show that the party providing the factual evidence is competent to testify.").

¶21.    The special master's report recites such "undisputed fact[s]" as "[n]one of Sherwin-Williams Company brand residential paint formulas for white, blue, pink, or grey paints dated June 1, 1973 through December 31, 1978 contained any lead ingredient[,]" that "Sherwin-Williams Company had stopped selling its brand paints through dealers, such as Darcy [sic] Hardware, by early 1976[,]" and that "Sherwin-Williams Company residential paints have a recommended shelf life of three years or less and Darcy [sic] Hardware maintains only small quantities of paint, which it sold in a matter of weeks." These "undisputed facts" were properly controverted by sworn evidence in the form of affidavits by Drs. Paul Mushak and Roy Dowling, the deposition testimony of Doris Gaines, and the affidavit and deposition testimony of Johnny Crawford. Additional sworn testimony disputing the "undisputed facts" can be found in the deposition testimony of Reverend Lias

12

and an expert report penned by John F. Rosen, MD.[7]  This opposing evidence, when "viewed in the light most favorable to [Trellvion,]" *Mantachie Natural Gas*, 594 So. 2d at 1172, requires acceptance by the trial judge for summary judgment purposes, even though the judge – in this case, the special master – believes that a jury would reject the non-movant's version. Sworn evidence viewed in the light most favorable to Trellvion shows that Crawford's home was painted with white Sherwin-Williams paint in the early 1930s and was still painted white when Gaines moved in with Crawford in 1979; that Sherwin-Williams paint containing lead was obtained at Darsey Hardware in the late 1970s and 1980s, as both Gaines and Crawford swore; that both Gaines and Crawford purchased Sherwin-Williams brand paint containing lead in white, blue, and pink colors and applied it to the interior walls of Crawford's home; that paint chips containing lead in white, green, pink, grey, blue, and light blue were found on the charred walls of the home by ALTEC Environmental Consultants following the 1994 fire; that Trellvion ingested paint chips containing lead; and that injury resulted therefrom.

¶22.    Specifically, Reverend Lias swore that in the early 1930s he observed the house being painted with white Sherwin-Williams brand paint.  Gaines gave a sworn statement that the home was painted white prior to 1979.  Furthermore, she swore that in 1979, she purchased Sherwin-Williams brand paint containing lead in blue and pink colors and painted the interior of the home therewith, along with white Sherwin-Williams brand paint containing lead which Crawford claimed he had previously purchased.   Dr. Mushak, a "toxicologist and

---

[7]Professor of Pediatrics and Head of the Division of Environmental Sciences at the Children's Hospital at Montefiore Medical Center and the Albert Einstein College of Medicine in Bronx, New York.

environmental health scientist specializing in the toxicology and human risk assessment of environmental metals, especially lead[,]" swore that it is:

> highly likely that lead paint at toxic exposure levels *would have been available* for purchase by those painting the Gaines home in the 1970s and even later and that lead paint was applied to the walls of that home in that time period. That lead paint would have been available for producing lead poisoning in the Gaines child at the time of the blood lead testing and before.

(Emphasis added). In reaching that conclusion, Dr. Mushak relied on studies from reliable sources such as the Center for Disease Control, the federal agency for Toxic Substances and Disease Registry, and the Department of Consumer Protection for the State of Connecticut.[8] Gaines observed Trellvion ingesting paint chips "swept to the side" during the early 1990s painting project. Dr. Roy Dowling, an employee of ALTEC Environmental Consultants, issued a lead inspection report based upon X-Ray Fluorescence (XRF) readings obtained from the charred remains of the home's painted walls. In that report, Dr. Dowling concluded that "thirty-four (34) of the forty-one (41) samples contained lead-based paint. White, green, pink, gray, blue, and light blue paint coatings were found to contain lead."[9] Finally, the report of John F. Rosen, MD, stated that:

---

[8] For example, Dr. Mushak cites the findings of the Department of Consumer Protection for the State of Connecticut regarding a report memo to the United States Department of Health and Human Services "dated September 17, 1985, showing that the Department found in its investigations that some lead based paint over 22 years old was still on retail shelves."

[9] This finding, combined with Reverend Lias' sworn testimony that white Sherwin-Williams brand paint was used on the home in the early 1930s, creates a genuine issue of material fact for a jury to decide whether that paint contained lead. This is especially the case in light of the fact that Sherwin-Williams has proffered evidence that lead pigments were only removed from all of their interior and exterior residential paint by 1973.

14

with a reasonable degree of medical certainty, Trellvion was excessively exposed to lead based paint from very early infancy to and through his disease of childhood lead poisoning. With a reasonable degree of medical certainty, based upon substantially elevated XRF readings for lead and substantially elevated concentrations of lead in paint samples analyzed by AAS (ALFEC Environmental Consultants, Inc.; Dr. Paul Mushak), from accessible household areas for Trellvion living at his home at 553 Highway, his disease of lead poisoning was caused by ingestion of lead based paint and leaded dust therefrom at his home . . . .

On cognitive testing by Dr. T. Lidsky . . . Trellvion was found to have documented cognitive deficits in visual-spatial-constructional skills and memory, fine motor skills, visual and auditory attention, verbal fluency, non-verbal concept formation and cognitive flexibility. With a reasonable degree of medical certainty, based, in part, on my extensive clinical experience, and, based, in part, on review of the pertinent literature, Trellvion's cognitive deficits were caused by his documented history of childhood lead poisoning.

¶23. Collectively, the sworn testimony of these witnesses, "viewed in the light most favorable to [Trellvion,]" *Mantachie Natural Gas*, 594 So. 2d at 1172, creates genuine issues of material fact regarding the "undisputed facts" adopted by the special master and relied upon in the dissent. Is it more likely than not, given that eighty-three percent (83%) of the paint chips contained lead, that Trellvion may have ingested paint residuum containing lead? The fact that Sherwin-Williams denied manufacturing and marketing paint containing lead at the time of his exposure, despite evidence to the contrary, merely creates an issue for a jury to resolve.

¶24. Furthermore, the special master improperly assessed the credibility of witnesses in rendering the "Report and Recommendation," despite his acknowledgment that our law clearly establishes that such credibility determinations were not within his province. Specifically, the "Report and Recommendation" provided that:

15

> Doris Gaines and Vernon Collier have given contradictory statements. *While it is not the role of a trial judge to judge the credibility of witnesses, the summary judgment standard does require a credible basis in evidentiary fact to create a material issue of fact. . . .* Mr. Crawford's . . . affidavits are directly contradictory. Mr. Crawford's second affidavit is wholly without credible and competent fact.

(Emphasis added). The special master was without authority to ignore material, controverted sworn evidence,[10] based upon which seemed more credible, which is not the test for admissibility or competency. According to ***Daniels***, "[i]n order for there to be genuine issues of material fact, the affidavits and other evidence must be sworn, made upon personal knowledge, and show that the party providing the factual evidence is competent to testify." 629 So. 2d at 599. The testimony of multiple witnesses support a finding for summary judgment purposes, that Sherwin-Williams-brand paint containing lead was used in the home. Sherwin-Williams denies such assertions. These factual disputes are best left for a jury. *See* Miss. Const. art. 3, Section 31 ("[t]he right of trial by jury shall remain inviolate . . . ."). Without question, "'[t]he trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire.'" ***Amiker v. Drugs for Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000) (quoting ***Gavin v. State***, 473 So. 2d 952, 955 (Miss. 1985)). However, in this summary judgment context, these advantages are non-existent. As such, the special master was no better equipped than this Court to make findings of fact. Nonetheless, he weighed conflicting evidence and then rendered a decision based on which party's version he deemed more credible. Giving Trellvion "the benefit of

---

[10]Not mere allegations as asserted in the separate opinion.

16

every reasonable doubt[,]" *Mink*, 537 So. 2d at 433, this is clearly an "issu[e] of fact sufficient to require denial of a motion for summary judgment . . . [as] one party swears to one version of the matter in issue and another says the opposite." *Mantachie Natural Gas*, 594 So. 2d at 1172.

¶25. The role of the special master or trial court is not to weigh the facts, but "only [to] determine whether there are issues to be tried." *Brown*, 444 So. 2d at 362. In so doing, the special master was called upon to give Trellvion "the benefit of every reasonable doubt." *Mink*, 537 So. 2d at 433. The special master failed to do so in the case sub judice by (1) adopting Sherwin-Williams' "undisputed facts" without acknowledging Trellvion's evidence to the contrary and (2) assessing the credibility and then disregarding the testimony of witnesses for Trellvion. Individually and collectively, these provide only examples of multiple issues of material fact that can only be properly resolved by a jury.

¶26. In *Daubert v. Merrell Dow*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993), the United States Supreme Court held, "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment . . . and likewise to grant summary judgment." *Id*. at 596. Webster's Dictionary defines "scintilla" as, "a tiny amount." Webster's II New College Dictionary 989 (2001). In this matter, the special master was presented with considerably more than a tiny amount

17

of evidence.[11]  Accordingly, there are genuine issues of material fact which a jury, presented with evidence and testimony, must ultimately decide.

### III. Whether the circuit court erred in finding that Sherwin-Williams owed no duty, under Mississippi law, to warn of the dangers associated with surface preparation on its non-lead paint cans?

¶27.  In addressing Trellvion's failure-to-warn claim, the special master concluded that the "claims attempt to impose warning not required by federal law.  This is the kind of claim preempted by [the] [Federal Hazardous Substances Act ("FHSA")]."  The FHSA was enacted in 1960 and mandated the labeling of certain "hazardous" consumer products intended for use in the household or by children.  *See Chem. Specialties Mfrs. Ass'n v. Allenby*, 958 F. 2d 941, 945 (9th Cir. 1992).  In 1966, the Act was significantly amended to include a preemption provision to prevent each state from creating different labeling requirements for hazardous substances.  *See* House Committee on Interstate and Foreign Commerce, Child Protection Act of 1966, H.R. Rep. No. 2166, 89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 U.S. Code Cong. & Admin. News 4095, 4097.  The preemption provision provided:

> [i]t is hereby expressly declared that it is the intent of the Congress to *supersede any and all laws of the States and political subdivisions thereof* insofar as they may *now or hereafter* provide for the *precautionary labeling* of any *substance* or article *intended or suitable for household use* (except for those substances defined in sections 2(f)(2) and (3) of this Act) which *differs from* the *requirements* or exemptions of this Act *or the regulations or interpretations promulgated pursuant thereto*.  Any law, regulation, or ordinance purporting to establish such a labeling requirement shall be *null and void*.

---

[11]This is not simply the view of this Court.  The special master wrote following removal and remand, "United States District Judge David Bramlette, III . . . commented that the evidence offered by the Plaintiffs was 'very weak and suspect[, but that] . . . such evidence does provide a slim possibility for recovery[.]'"

Child Protection Act of 1966, Pub. L. No. 89-756, 80 Stat. 1303 (1966) (current version at 15 U.S.C. § 1261, *et seq*.) (emphasis added).

¶28.   This Court agrees that post-1966 FHSA amendment, any theory of recovery based upon "the precautionary labeling of any substance or article intended or suitable for household use . . . which differs from the requirements or . . . the regulations or interpretations promulgated pursuant thereto. . . . [S]hall be null and void." *Id*. The FHSA amendment which added the preemption provision clearly applies to failure-to-warn causes of action brought after adoption of the amendment, and which are based upon "requirements" beyond those mandated by the FHSA.  However, "if Congress intended to preclude all common-law causes of action," it would have done so expressly. ***Medtronic, Inc. v. Lohr***, 518 U.S. 470, 487, 116 S. Ct. 2240, 2251, 135 L. Ed. 2d 700, 717 (1996).  As such, this Court finds that Trellvion can proceed with common-law liability claims that do not run afoul of FHSA preemption.  Therefore, any pre-1966 FHSA amendment theories of recovery asserted by Trellvion, whether founded upon negligence, failure to warn, defective design, or fraud, are not preempted.  Any post-1966 FHSA amendment theories of recovery not based upon "the precautionary labeling of any substance or article intended or suitable for household use," or based upon a violation of the requirements, regulations, or interpretations of 15 U.S.C. § 1261 (i.e., a claim of noncompliance with the FHSA), are not preempted.

## CONCLUSION

¶29.   This Court reverses the judgment of the Court of Appeals in part, finding that Trellvion's claims are not barred, as the "minor saving statute" is applicable, and affirms the judgment of the Court of Appeals in part as to the dismissal with prejudice of Pollard's

19

claims. Moreover, this Court reverses the circuit court's grant of summary judgment for Sherwin-Williams and finds that genuine issues of material fact exist. Accordingly, this dispute is remanded for a trial.

¶30. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED IN PART AND AFFIRMED IN PART, AND THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON COUNTY IS REVERSED. THIS CASE IS REMANDED TO THE CIRCUIT COURT OF JEFFERSON COUNTY FOR TRIAL**.

**WALLER AND COBB, P.JJ., DIAZ AND GRAVES, JJ., CONCUR. SMITH, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, CARLSON, AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶31. I agree with the majority as to Issues I, Minor's Saving Clause, and Issue III, the failure-to-warn claim. I disagree as to Issue II, regarding granting of summary judgment as to the identification of the product as Sherwin-Williams lead base paint.

**a.     Identification of the Product Involved**

¶32. "[i]t is incumbent upon the plaintiff in any products liability action to show that the defendant's product was the cause of the plaintiff's injuries." ***Moore v. Miss. Valley Gas Co.***, 863 So.2d 43, 46 (Miss. 2003). Pollard and Trellvion argue that, prior to 1970, the house was painted with Sherwin-Williams lead-based paint. The record shows that there is no admissible evidence to support this allegation. Pollard and Trellvion submit by deposition, testimony of Reverend Lias who said in the 1930s individuals painting the house told him they were using paint with lead in it. This testimony is inadmissible hearsay and insufficient to avoid summary judgment; the special master and judge so held.

20

¶33. Pollard and Trellvion further allege that the house was painted using Sherwin-Williams lead paint on four separate occasions between the late 1970s and 1994. Plaintiffs claim that the lead-based paint used was purchased at local hardware stores and once in the mid-1980s from a Sherwin-Williams store. Plaintiffs assert that the house was painted with white, blue, pink, and grey paint. The record indicates that the home was purchased in 1978 by Johnny Crawford, and subsequently inhabited by Gaines. Therefore, Gaines could not have painted the home until after 1978. Gaines could not have used lead-based paint that was sitting around for years on the shelf of Darsey's Hardware, because the record reflects that she had to order the paint that she purchased at the store. Plaintiffs have no paint cans or labels to prove that Sherwin-Williams Company lead-containing paint was applied to the home. At best, Plaintiffs have advanced a mere scintilla of colorable evidence which absolutely will not defeat a motion for summary judgment.

¶34. Further, and more importantly, the undisputed facts show that Sherwin-Williams had removed lead pigments from all of its interior residential paint by 1955 and from all interior and exterior residential paint by no later than 1973. None of Sherwin-Williams' residential paint formulas for white, blue, pink, or grey paints dated June 1, 1973 through December 31, 1978 contained any lead ingredient. Sherwin-Williams stopped selling its Sherwin-Williams-brand residential paints through independent dealers such as local hardware stores by early 1976.

¶35. In *Luvene v. Waldrup*, 903 So. 2d 745, 748 (Miss. 2005), this Court stated that "[t]he non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict.

21

In *Luvene*, this Court found an affidavit fatally defective and deficient regarding a critical element of the underlying claim. The affidavit was merely a broad summarization of the required elements of the claim. This Court found that summary judgment was appropriate because "[t]he affidavit failed to set forth specific facts and certainly did not provide more than a mere scintilla of colorable evidence." *Id.*

¶36. Similarly, Plaintiff's only product identification comes by way of the affidavits of Doris Gaines and Johnny Crawford, who testied they saw the words "lead" or "lead paint" on some portion of the labels. Neither Gaines nor Collier have personal knowledge of whether the paint they used contained any lead, and both have given contradictory statements. During Collier's deposition he admitted he was just assuming that the paint contained lead because it was washable. Collier does not assert that any one told him the paint contained lead, that he read the labels, nor that he asked for lead-containing paint.

¶37. During Gaines first deposition, she admitted that she did not look at the labels to see if the paint contained lead, but in her second deposition she claimed that she read the labels and saw that it was lead-based. This testimony contradicts, without explanation, her previous testimony, and such cannot defeat a motion for summary judgment.

¶38. What this all adds up to is unsupported speculation and allegations, and they are not sufficient to defeat a motion for summary judgment. *Gorman-Rupp Co. v. Hall*, 908 So. 2d 749, 757 (Miss. 2005); *Adams v. Cinemark United States*, 831 So. 2d 1156, 1162 (Miss. 2002). In *Corey v. Skelton*, 834 So. 2d 681 (Miss. 2003), this Court affirmed the trial court grant of summary judgment. In *Corey*, the plaintiff's mere allegation was insufficient to

22

establish a critical element of his claim, in light of the "voluminous record" to the contrary. *Id.* at 684.

¶39.   Plaintiffs have failed to provide sufficient evidence to establish that Sherwin-Williams manufactured the alleged lead paint.   Therefore the trial court's dismissal of Plaintiffs' product liability claims as unmeritorious was proper and should be affirmed.

¶40.   For the aforementioned reasons, I respectfully concur in part and dissent in part.

**EASLEY, CARLSON AND DICKINSON, JJ., JOIN THIS OPINION.**